In the Matter of John A. KESLER.

No. 877S602.

Supreme Court of Indiana.

Nov. 15, 1979.

John A. Kesler, pro se.

Robert W. McNevin, Indianapolis, for appellant.

David B. Hughes, Indianapolis, for appellee.

## DISCIPLINARY ACTION

### PER CURIAM.

This proceeding is before the Court on a Verified Complaint for Disciplinary Action filed by the Indiana Supreme Court Disciplinary Commission pursuant to Admission and Discipline Rule 23, Section 12. Under the procedures set forth in Admission and Discipline Rule 23, this Court appointed a Hearing Officer, a hearing was held and the Hearing Officer has filed Findings of Fact relative to the allegations raised in the Verified Complaint. Respondent now petitions this Court for review of the Hearing Officer's findings. Both parties have filed briefs and a Brief of Amicus Curiae has been received and considered by this Court. Additionally, Respondent has requested oral argument, which is now denied.

In his Petition for Review and Brief, the Respondent has raised several issues of a general nature challenging the validity of this disciplinary proceeding. These matters must be resolved before assessing the evidence of unethical behavior presented in this case.

Respondent asserts that the charges raised in the complaint should have been dismissed in that the alleged professional misconduct was the subject matter of a previous proceeding in the Vigo Circuit Court. Respondent contends that the doctrines Res Judicata and Estoppel by Judgment preclude the relitigation of these issues.

The Verified Complaint filed in this cause charges the Respondent with professional misconduct in the course of the administration and distribution of the Estate of Elsie M. Grammer. The complainant who brought this matter to the attention of the Disciplinary Commission was the primary beneficiary under the estate, John L. Smith. At approximately the same time Mr. Smith forwarded his grievance, he filed his objections to the Final Report in the Grammer estate. The later pleading was eventually dismissed by the Judge of the Vigo Circuit Court pursuant to a Verified Stipulation of Fact tendered by Mr. Smith to the Court. Respondent now argues that by accepting this stipulation, the Vigo Circuit Court adjudicated the facts and issues now before this Court under the present disciplinary proceeding.

The argument presented by Respondent fails to recognize that the Vigo Circuit Court did not have jurisdiction to resolve the issues now before this Court.

The Constitution of the State of Indiana vests this Court with exclusive jurisdiction in matters involving the admission and discipline of attorneys. Indiana Constitution, Article 7, Section 4. By reason of this constitutional duty, this Court has adopted substantive standards of performance and procedures for the adjudication, as an Original Action in this Court, of alleged misconduct. The distinction between the authority of this Court in disciplinary matters and the validity of a trial court's judgment has prompted this Court to note on several occasions that professional misconduct by the members of the Bar of this State is to be determined independent from criminal or civil matters out of which allegations of misconduct may arise. *In re Mann,* (1979) Ind., 385 N.E.2d 1139; *In re Crumpacker,* (1978) Ind., 383 N.E.2d 36; *In re Wireman,* (1977) Ind., 367 N.E.2d 1368, *cert. denied,* 436 U.S. 904, 98 S.Ct. 2234, 56

L.Ed.2d 402. Thus, while the Vigo Circuit Court had authority to determine and resolve the issues raised by reason of objections filed by Mr. Smith, it was without authority to bind this Court to a decision embracing professional misconduct. The evidence presented in this cause indicates that the decision by the Vigo Circuit Court did not purport to invade the province of this Court.

In view of the above considerations, we now find that the Hearing Officer did not err in denying Respondent's Motion to Dismiss. We further find that Respondent's assertion, as raised in his Answer and Petition for Review, to the effect that the determination of the Vigo Circuit Court precludes consideration of allegations of misconduct charged under this complaint, is without merit.

■ Respondent has also argued that he was twice placed in jeopardy by reason of the Vigo Circuit Court's consideration of the objections and this Court's disciplinary procedure. Double jeopardy is a constitutional doctrine applicable in criminal proceedings; a disciplinary action under Admission and Discipline Rule 23 is not a criminal proceeding. Accordingly, we now find that the assertion of double jeopardy is also without merit.

■ In his Petition for Review the Respondent specifically incorporates several additional paragraphs of his Answer challenging the constitutionality of this proceeding. Respondent argues that he should have been afforded an opportunity to personally appear before the Disciplinary Commission prior to the Commission's decision to file a complaint in this cause. He asserts that the failure to allow this meeting was a denial of due process.

Respondent has not cited, nor are we aware of, any authority to support Respondent's argument. The procedures set out in Admission and Discipline Rule 23 provide for an appropriate notice and hearing at which time an individual can confront those making allegations against him and raise matters in defense. These rules meet the requirements of due process. See, *In re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117, *reh. denied*, 391 U.S. 961, 88 S.Ct. 1833, 20 L.Ed.2d 874; *In re Wireman*, *supra*; *In re Murray*, (1977) Ind., 362 N.E.2d 128. Additionally, Respondent has not shown any prejudice by reason of the lack of a hearing with the Disciplinary Commission prior to the filing of the complaint. In light of these considerations, we find no constitutional infirmity in the proceedings under this cause.

■ The other issues incorporated from Respondent's Answer are the assertions that this proceeding denied him his constitutional right to enter into a private contract with Mr. Smith and that the disciplinary process and various provisions of the *Code of Professional Responsibility* are unconstitutionally vague. These issues, however, are raised in a general manner and not supported by specific argument or any citation of authority. We, accordingly, find that these issues, as they stand without sufficient specificity, do not present an issue for determination by this Court.

In another portion of his Petition for Review the Respondent claims that he did not receive a fair hearing before the Hearing Officer. It is asserted that the Hearing Officer was biased and prejudiced against the Respondent, that politically slanted news accounts prevented a fair hearing, that "leaks" of information to the press precluded fair consideration, and that the Disciplinary Commission did not serve Respondent with a copy of the Commission's proposed findings.

■ In support of his allegation of bias and prejudice, the Respondent sets forth the Hearing Officer's decisions concerning the credibility of witnesses, the denial of a continuance, and the adoption of the Commission's proposed findings. The Respondent, however, has not pointed to any evidence in addition to these decisions. If adverse rulings and findings, without additional corroboration, could establish bias or prejudice, this Court would never be able to affirm a determination in any type of review. Accordingly, we must find the evi-

dence in this cause insufficient to support a finding of bias or prejudice.

 We further find that Respondent's assertions that press coverage of this matter, alleged "leaks" of confidential information, and the failure of the Commission to serve a copy of proposed findings do not demonstrate error in these proceedings. Respondent contends that certain events transpired and that the news coverage of these proceedings led to his defeat in a political campaign, but he has not shown nor does the record demonstrate that these alleged events improperly influenced the Hearing Officer or created an environment in which a fair hearing could not be conducted. We further note that it is this Court and not the Hearing Officer which makes the ultimate determination of fact in a disciplinary proceeding. *In re Crumpacker, supra; In re Murray, supra.* It being our responsibility to make such decisions we note that the extra judicial circumstances related by the Respondent are not relevant to our determination.

In the remaining portion of his Petition for Review, the Respondent asserts error in the Hearing Officer's findings and argues that this Court should arrive at certain factual and legal conclusions by reason of the evidence of record. These issues will be resolved through this Court's determination of what acts were done by the Respondent and whether or not this conduct constitutes a violation of the *Code of Professional Responsibility*.

As previously noted, the Respondent is charged with unethical behavior while acting as attorney for the Estate of Elsie Grammer. More specifically, the Respondent is charged with violating Disciplinary Rules 1–102(A)(4) and (6) of the *Code of Professional Responsibility* by filing and swearing to a false and misleading "Petition for Partial Distribution" in the Grammer estate; with violating Disciplinary Rule 9–102(A) by commingling client's funds; and with violating Disciplinary Rule 7–101(A)(3) by engaging in conduct which prejudiced and damaged John L. Smith.

Having examined all matters submitted in this cause, we now find that Respondent was admitted to the Bar of Indiana in 1951 and is engaged in the private practice of law.

On April 2, 1973, the Respondent and John L. Smith ("Smith") were appointed Co-Executors of the Last Will of Elsie M. Grammer. Respondent was also the attorney for the Estate. The Co-Executors qualified, gave their joint and several surety bond in the sum of $75,000, and commenced the administration of the Estate. The will provided a $1,000 cash bequest to the testatrix's cousin, James Edward Smith, and the rest, residue and remainder was given and bequeathed to Smith. The estate consisted of real and personal property having an approximate value aggregating in excess of $100,000.

Smith desired a partial distribution of his share prior to the closing of the Estate in order to purchase a residence for himself and requested Respondent on several occasions to provide the partial distribution. The Respondent advised Smith in substance that no partial distributions would or could be made within six (6) months of the opening of the Estate because such was the period of time within which claims or a will contest could be filed. After six (6) months, Smith again requested the Respondent to permit a partial distribution to Smith of $45,000.

Respondent was concerned about his personal liability to taxing authorities in the event distributions to Smith rendered the Estate unable later to discharge then unforeseen tax liabilities and in the event a recovery from Smith could not be made. The Estate was solvent, but Respondent had information that the deceased had been "generous" to Smith before her death and the Respondent thought that additional tax liability to the Estate could arise from predeath transfers.

Respondent consulted a Terre Haute CPA for advice and was told that, conceivably, the Respondent could incur some personal responsibility by making a premature distribution before the receipt of final tax clear-

ances. Respondent informed the CPA that Respondent was considering an arrangement whereunder a portion of the distribution would be placed with the Respondent in escrow, so that the Respondent would be held harmless if the Estate was financially unable to pay potential tax claims due to a deficiency in estate funds created by the advance distribution. The CPA advised the Respondent that the escrow proposal sounded like an excellent and proper way to handle the matter.

In October, 1973, Respondent and Smith again discussed the partial distribution desired by Smith. Following this discussion a "Petition for Partial Distribution" was filed in the Vigo Circuit Court. The petition, *inter alia*, stated as follows:

"That said John Smith has an urgent need for part of the money coming to him and is desirous of having $45,000.00 of his bequest paid over to him at this time as partial distribution of what he'll having coming at the close of this estate, and no possible hazard or danger could come to any creditor, devisee or anybody by him receiving this money at this time."

There was no mention in the petition of any escrow agreement. The Court approved the partial distribution. At the time this pleading was filed, the Respondent was serving as Probate Commissioner of the Vigo Circuit Court.

The partial distribution of $45,000 was drawn by the Co-Executors in two checks payable to Smith, one for $30,000 and the second in the amount of $15,000. Smith kept the $30,000 check but returned the $15,000 check to the Respondent after endorsement. The Respondent either deposited the $15,000 in his personal checking or savings accounts, purchased bonds or other investment paper, or otherwise utilized the proceeds as his own. By the Respondent's own admission, he considered the funds his own to do with as he pleased, subject only to a claimed escrow arrangement and to his duty to repay the principal amount of $15,-000 to Smith at the time of final distribution of the Estate.

Thereafter, three (3) additional partial distributions were made to Smith by the Co-Executors without petition or court order. The dates of such distributions, and the amount of each, were as follows:

| Date | Amount |
| --- | --- |
| February 21, 1974 | $ 7,500.00 |
| May 23, 1974 | 15,000.00 |
| May 8, 1975 | 15,000.00 |

On the occasion of each additional partial distribution, the Respondent obtained from Smith one-third (⅓) of such distribution. As in the case of the initial distribution, the Respondent did not recall, nor was he able to reconstruct from his records, what he did with the additional $12,500 he received from Smith between February 21, 1974, and May 8, 1975. He either deposited such monies in his personal checking or savings accounts, purchased bonds or other investment paper, or otherwise utilized the monies as his own. By May 8, 1975, the Respondent had obtained from Smith a total of $27,500. At no time did Smith know of, or inquire into, the whereabouts of any of the funds (or their proceeds) he had given the Respondent at the time of the various partial distributions.

There was substantial delay in closing the Estate. The Final Report was eventually filed on November 19, 1975, and set for hearing on December 10, 1975. Smith appeared at the scheduled hearing and, with the help of the then Probate Commissioner, filed his sworn objections to the Final Account wherein he stated that he had received only two-thirds (⅔) of the amounts for which he had given the Respondent receipts. A hearing on Smith's objections to the Final Report was scheduled for January 8, 1976. However, on December 17, 1975, Smith and the Respondent appeared before the Judge of the Vigo Circuit Court and filed a "Verified Stipulation of Facts and Dismissal of Objection to Final Report" which had been authored by the Respondent. On the same day, Smith received from the Respondent the sum of $27,500, the principal amount paid by Smith to the Respondent out of Smith's partial distributions.

In his Petition for Review, Respondent has asserted that the funds given to him were received under a written escrow

agreement freely consented to by Smith and were secured by government securities issued in the name of the Respondent. It appears to us, however, that Respondent's emphasis on a written agreement is misplaced.

▆ Respondent has been charged with violating Disciplinary Rule 9–102(A) which provides as follows:

> D.R. 9–102. Preserving Identity of Funds and Property of a Client.
>
> (A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein
>
> . . .

The evidence in this case demonstrates that the funds received by the Respondent from the partial distributions were not deposited in a separate account, were commingled with his own funds and were treated as his own. The Respondent made no accounting of the funds to Smith or the Estate; in fact, it appears that the Respondent considered this money to be his own, subject only to repayment of the principal amount. If it was the Respondent's intent to safeguard the Estate from unknown tax consequences, he could easily have done so by leaving a sufficient balance in the Estate. This procedure would have produced income for the Estate, not the Respondent.

By reason of the foregoing findings of fact, this Court now must conclude that the Respondent violated Disciplinary Rule 9–102(A) as charged under the Verified Complaint filed in this cause.

We further conclude that by filing the Petition for Partial Distribution in the Estate of Elsie M. Grammer under the facts as found by this Court in this case, the Respondent engaged in conduct involving a misrepresentation to the Court adversely reflecting on his fitness to practice law. Accordingly, we now find that the Respondent has violated Disciplinary Rules 1–102(A)(4) and (6) as charged in the Verified Complaint.

Lastly, we must additionally conclude that by diverting income producing assets from the Estate of Elsie M. Grammer to the personal benefit of himself, the Respondent prejudiced the interests of his client and thereby violated Disciplinary Rule 7–101(A)(3) of the *Code of Professional Responsibility*.

▆ Having concluded that the Respondent engaged in unprofessional and unethical conduct, this Court, as required by the Constitution of this State, must impose an appropriate disciplinary sanction. In the pleadings filed in this cause, many fine citizens and highly respected members of the Bar of Indiana have recounted the past accomplishments of the Respondent and asked this Court for leniency. We have not ignored this testimony. But past performance and accomplishments cannot, by themselves, determine the sanction to be imposed. The interests protected by enforcement of professional conduct are much greater and extend to broad social concerns. This Court must weigh these broader considerations as well as the impact discipline will have on an individual.

The evidence in this case demonstrates a total lack of understanding of the professional standards which must be strictly maintained when an attorney is responsible for the management of his clients's funds. The practice of law regularly places a lawyer in a situation where he controls the funds of another. As in the case of an estate, it may be likely that this client will not understand the circumstances surrounding the distribution of these funds. The lawyer must truly be a fiduciary and the standard imposed by the *Code of Professional Responsibility* unequivocally sets forth the conduct expected of every attorney; he must deposit his client's funds in an identifiable bank account in this State and must not deposit any personal funds in this account.

It is clear from the record that the Respondent did not sufficiently segregate himself from the funds of his client. Unfortunately, this is not merely a case of poor accounting practices, but appears to be a deliberate course of conduct whereby an

attorney chose to make a personal gain at the expense of his client, the Estate. This strikes the Court as a shocking lack of understanding of the fiduciary responsibilities placed on all the members of the Bar of this State.

In light of the above consideration, this Court now finds that in order to preserve the integrity of the Bar of this State and in order to demonstrate this Court's total abhorrence of the acts of misconduct present in this case, the strongest sanction permitted must be imposed in this case. It is therefore ordered that the Respondent be, and he hereby is, disbarred as an attorney in the State of Indiana.

Cost of these proceedings are assessed against the Respondent.

DeBRULER, J., would impose a suspension of not less than three years in this case.