### In the Matter of Jerald S. MEACHAM.

### No. 45S00–9201–DI–3.

Supreme Court of Indiana.

March 16, 1994.

No Appearance for the respondent.

Jeffrey D. Todd, Indianapolis, IN, for Indiana Supreme Court Disciplinary Com'n.

## DISCIPLINARY ACTION

### PER CURIAM.

The Respondent here, Jerald S. Meacham, was charged by a three-count Amended Verified Complaint for Disciplinary Action with several violations of the Rules of *Professional Conduct for Attorneys at Law.* This Court appointed a Hearing Officer pursuant to Ind. Admission and Discipline Rule 23, Section 11(b) who, after full hearing, tendered to this Court his findings of fact and conclusions of law. Although the Respondent had actual knowledge of the time, date, and place of hearing, he failed to appear. Following hearing, Respondent was suspended from the practice of law pending this Court's final resolution of this matter, pursuant to Admis.Disc.R. 23(15)(b).

Both the Respondent and the Disciplinary Commission have petitioned this Court for review of the Hearing Officer's report, the Commission contending that the Hearing Officer failed to find several undisputed facts adduced during hearing, and the Respondent challenging both the factual findings and conclusions of law contained in the report.

Upon review of the matters now before this Court, we find that Respondent was admitted to the Bar of this state on May 31, 1979, and is therefore subject to the disciplinary jurisdiction of this Court. Under Count I, we find that Jewell L. James ("James") retained Respondent to represent her, pursuant to a contingency fee agreement, regarding injuries and property damage she suffered in an automobile accident. Respondent negotiated a settlement with Allstate Insurance Company ("Allstate"), James' carrier. In accordance therewith, Allstate distributed three checks to Respondent: a draft for $345.48, dated September 30, 1990, payable to James; and two drafts in the amounts of $1,654.52 and $5,000.00, respectively, payable to Respondent and James, on November 1, 1990. Respondent deposited all three drafts in his personal non-trust account, resulting in that account reflecting a balance of $7,000.00 on November 20, 1990. Respondent negotiated the jointly-payable checks by forging James' signature. Between mid-November and December 5, 1990, Respondent drew checks on the account for $500.00, $2,000.00,

$100.00, $100.00, $95.00, $182.00, $500.00, $200.00, $335.00, $385.00, and $100.00, each for cash or personal expenses. James never authorized the distribution of any settlement proceeds. On December 5, 1990, Respondent's personal account posted a negative balance of $1,939.46.

During December, 1990, James twice unsuccessfully attempted to learn the status of the settlement negotiations. She finally learned, through Allstate, that Respondent had received the settlement proceeds. During a January 28, 1991 meeting, Respondent told James that the proceeds were in his account, but that he preferred to settle business with clients using certified checks. James has never recovered any of the $7,000.00 settlement proceeds from Respondent.

The facts clearly and convincingly establish that Respondent violated Ind. professional Conduct Rule 1.3 by failing to act with reasonable diligence and promptness while representing a client; that he violated Prof. Cond.R. 1.15(a) by placing settlement proceeds in his personal non-trust account; and that he violated Prof.Cond.R. 1.15(b) by failing to promptly notify his client that the proceeds had been received, and to timely distribute them to her. Furthermore, Respondent violated Prof.Cond.R. 8.4(b) by committing a criminal act, the conversion of funds, which reflects adversely on his honesty, trustworthiness, and fitness as a lawyer in other respects. His forgery of James' signature constitutes a criminal act involving dishonesty, fraud, deceit, and misrepresentation, violative of Prof.Cond.R. 8.4(b) and (c).

Under Count II, we find that Sam Rizzo ("Rizzo") retained Respondent in November, 1990, to pursue a claim arising out of an automobile accident. Rizzo suffered injuries and as a result accumulated medical bills in the amount of $4,222.50. The parties executed a fee agreement as consideration for Respondent's services. Respondent negotiated a settlement with State Farm Insurance Company ("State Farm") for $12,600.00, which was paid with two checks. The first, dated December 19, 1990, was for $600.00, payable jointly to Rizzo and his mother. The

second draft was for $12,000.00, received February 19, 1991, and payable jointly to Rizzo and his wife. Respondent forged the payees' signatures on both drafts and deposited the funds into his personal account at Gainer Bank. By March 8, 1991, the balance of the Gainer account had fallen to $4,163.53, despite the fact that Respondent distributed none of the settlement proceeds to Rizzo.

In April, 1991, Rizzo contacted State Farm and learned that Respondent had received and negotiated the settlement checks. In mid-April, Respondent showed Rizzo checks made payable to various health care providers, and told Rizzo that he would mail them. Respondent did not tender any settlement proceeds to Rizzo, but assured him that a check for the proceeds was forthcoming. Despite these assurances, neither Rizzo nor any health care provider ever received proceeds from Respondent. Rizzo subsequently confronted Respondent, whereupon Respondent gave Rizzo a check, which later proved to be non-negotiable. After that, Respondent failed to tender to Rizzo any settlement proceeds, despite repeated promises to the contrary.

Respondent's repeated failures to tender settlement proceeds to his client and to health care providers violated Prof.Cond.R. 1.3. Respondent violated Prof.Cond.R. 1.15(a) by depositing client funds in his personal bank account, and Prof.Cond.R. 1.15(b) by failing to promptly notify his client that settlement proceeds had been received, and to promptly deliver them to his client. Further, by committing the criminal acts of forgery and conversion, Respondent violated Prof.Cond.R. 8.4(b). Such action demonstrates fraudulent and deceitful conduct that is prejudicial to the administration of justice and violative of Prof.Cond.R. 8.4(c) and (d).

Under Count III, we find that near the end of 1980, Bertha Hardaway ("Hardaway") was injured by gunshot fire while a passenger on a Consolidated Railroad train. She thereafter retained Respondent to pursue a civil action for her injuries. In 1982, Hardaway's daughter, Bettina Grady ("Grady"), was appointed guardian of the person and estate of Hardaway.

In 1985, Respondent successfully negotiated an $85,000.00 settlement in Hardaway's personal injury suit. Respondent collected the proceeds and promptly remitted them to Grady, after deducting fees and costs due him under a previously-established services agreement. In December, 1989, Respondent contacted Grady and told her that the Internal Revenue Service ("IRS") had informed him of delinquent taxes due and owing on the settlement proceeds. Relying on Respondent's assertions, Grady tendered to Respondent $6,500.00 for purported delinquent federal income taxes, and $1,440.00 for purported state income taxes. Thereafter, Grady was never contacted by the IRS or the Indiana Department of Revenue, nor did she receive receipts from those agencies for the amounts tendered. Respondent again contacted Grady in January, 1990, this time informing her that the court supervising the guardianship was concerned about a low rate of return on the settlement investments. Respondent suggested that she forward to him $12,800.00 of the proceeds, which he would reinvest in higher-yield securities. Grady did so, but Respondent never invested the funds.

Grady's anxiety over Respondent's handling of the guardianship assets mounted during the spring and summer of 1990. For several months, she unsuccessfully attempted to contact Respondent. In September, 1990, Respondent informed her that the IRS determined that no income taxes had been due, and that sums paid were being refunded with interest. However, Grady received no refund. On September 20, 1990, Respondent showed Grady a document from Gainer Bank purporting to show that the IRS refund had reached the bank. That document had in fact been forged by Respondent. He then gave Grady a check for $8,894.30, telling her to "hold" the check for a week. Respondent informed Grady at the end of one week that she should not yet cash the check. Grady became increasingly suspicious and never attempted to negotiate the check. With no funds ever forthcoming, Grady contacted Respondent on March 25, 1991, and informed him that she was initiating legal action to recover sums owed. In response, Respon-

dent gave Grady $950.00, the only amount he has to date returned to her.

Our findings establish that Respondent violated Prof.Cond.R. 1.15(a) by placing his client's funds in his personal account for personal use; Prof.Cond.R. 1.15(b) by failing to promptly deliver guardianship funds to Grady after her repeated demands; and Prof. Cond.R. 8.4(b) by committing the criminal acts of forgery and conversion of funds. Furthermore, Respondent's repeated schemes and misrepresentations regarding federal and state tax liabilities amounts to dishonest and deceitful conduct prejudicial to the administration of justice and thereby violative of Prof.Cond.R. 8.4(c) and (d).

Respondent attacks several of the Hearing Officer's factual findings, alleging that they are "one-sided, self-serving statements and distortions of the actual facts in this matter." However, since Respondent chose to not appear at hearing, the record indicates that he offered no defense to the disciplinary charges. With no evidence of record to support his allegations of error in the findings, Respondent cannot muster a cogent argument in his favor. Further, the facts and assertions contained in Respondent's petition for review appear nowhere in the record. We therefore find his allegations of error in the factual findings of the Hearing Officer to be without merit.

█ Respondent also contends that he did not voluntarily waive his right to defend himself at the hearing of this matter by not attending. He states he failed to appear upon the advice of his criminal attorney, who purportedly advised Respondent that statements made in administrative matters might waive certain rights in parallel criminal proceedings. Disciplinary proceedings stand independent of analogous criminal conduct. *In re Kesler* (1979), 272 Ind. 161, 397 N.E.2d 574, *cert. denied* 449 U.S. 829, 101 S.Ct. 96, 66 L.Ed.2d 34 (1980). Criminal charges need not be brought and tried prior to the citing of similar allegations in a disciplinary complaint. *In re Cook* (1988), Ind., 526 N.E.2d 703. Respondent received notice of the charges and an opportunity to be heard. *Kesler*, 272 Ind. at 164, 397 N.E.2d 574. He chose not to avail himself of that opportunity.

Accordingly, he waived his right to defend himself.

█ Having found misconduct, this Court must now assess an appropriate sanction. Respondent's record of dishonest, fraudulent, and criminal conduct is shocking and appalling. We are not faced here with an isolated instance of misconduct, but instead with a continuing pattern of intentionally deceptive conduct designed to convert significant sums of clients' money to Respondent's own use. Clearly, his professional behavior represents a threat to the public, other members of the Bar, this Court, and to the integrity of the entire legal profession. We are duty-bound to protect these interests, and therefore conclude that the appropriate measure in this case is disbarment. It is, therefore, ordered that the Respondent, Jerald S. Meacham, is hereby disbarred.

Costs of this proceeding are assessed against the Respondent.