|FOR THE RESPONDENTS |FOR THE INDIANA SUPREME COURT |
| |DISCIPINARY COMMISSION |
| | |
|Ronald E. Elberger |Donald R. Lundberg, Executive Secretary|
|Bose, McKinney & Evans LLP |Charles M. Kidd, Staff Attorney |
|2700 First Indiana Plaza |115 West Washington Street |
|135 North Pennsylvania Street |Suite 1165 |
|Indianapolis, IN 46204 |Indianapolis, IN 46204 |

 IN THE

 SUPREME COURT OF INDIANA

IN THE MATTER OF )
 ) CASE NO. 49S00-0006-DI-368
JAMES R. KELLER )

IN THE MATTER OF )
 ) CASE NO. 98S00-0006-DI-369
S. JACK KELLER )

 DISCIPLINARY ACTION

 August 8, 2003

Per Curiam.

 By authorizing advertisements for their law firm that suggested
insurance companies would settle claims merely because their firm
represented the claimants, the respondents violated the Rules of
Professional Conduct for Attorneys at Law. For this and another
advertising violation, we find today that the respondents should be
publicly reprimanded.
 The Indiana Supreme Court Disciplinary Commission charged the
respondents, James R. Keller and S. Jack Keller, with violations of the
Rules of Professional Conduct as a result of television advertisements they
authorized during 1999 and 2000 for their law firm, Keller & Keller. A
hearing officer conducted an evidentiary hearing on the charges, concluded
the Commission failed to carry its burden of proof, and recommended this
matter be dismissed. The Disciplinary Commission filed a timely petition
for review, challenging the hearing officer’s conclusions of law. Where the
hearing officer’s report is challenged, we review the record presented de
novo. Matter of Wilder, 764 N.E.2d 617 (Ind. 2002). Final determination as
to misconduct and sanction rests with this Court. Matter of Lamb, 686
N.E.2d 113 (Ind. 1997); Matter of Gerde, 634 N.E.2d 494 (Ind. 1994). Our
jurisdiction over the respondents arises from their admission to the
Indiana bar in February 1997.
 I. The Television Advertisements
 The respondents purchased four television advertisements from a
national marketing firm. Each advertisement consists of a standard
presentation customized to name the law firm purchasing the advertisement.
The first advertisement, known as the “Strategy Session,” depicts a
conference room where actors portraying insurance adjusters are discussing
a claim. An older man, the “senior adjuster,” asks a younger man, the
“junior adjuster,” how the claim should be handled. The junior adjuster
describes the claim as “…a large claim, serious auto accident” and suggests
they try to deny and delay to see if the claimant will “crack.” The senior
adjuster then asks which lawyer represents the victim, whereupon the junior
adjuster responds: “Keller & Keller.” A metallic sound effect follows and
the senior adjuster, now looking concerned, states: “Keller & Keller? Let’s
settle this one.” At this point in the advertisement, actor Robert Vaughn
appears on screen and advises viewers, “[T]he insurance companies know the
name Keller & Keller.” He invites individuals who have been injured in an
auto accident to tell the insurance companies they “mean business” by
calling Keller & Keller. Vaughn provides the respondents’ telephone
number, which also appears at the bottom of the screen.
 The second advertisement is a shorter version of the “Strategy
Session,” known as the “Settle-10” spot. This advertisement opens in a
conference room with the senior adjuster asking which lawyer is
representing the victim and the junior adjuster responding: “Keller &
Keller.” As with the “Strategy Session” spot, a metallic sound effect
follows and the obviously concerned senior adjuster states: “Keller &
Keller? Let’s settle this one.” The respondents’ telephone number appears
at the bottom of the screen.
 The third advertisement is a still shorter version of the “Strategy
Session,” known as the “Settle-5” spot. It begins with a metallic sound
effect and ends with a troubled looking senior adjuster stating: “Keller &
Keller? Let’s settle this one.”
 The parties agree that these three advertisements are fictional
dramatizations and not a re-enactment of any actual strategy session known
by the respondents to have actually occurred.
 The final advertisement, known as the “Victim’s Rights” spot, features
Vaughn introducing himself and stating:
 If you’ve been injured in an auto accident, you don’t need talk.
 You need to take back what’s been taken away from you. Tell the
 insurance companies you mean business. Tell them you’ve called
 Keller & Keller … They go after your rights piece by piece by
 piece until you get every dollar you deserve.

 The advertisement ends with a metallic sound effect and Vaughn
suggesting that viewers call “right now.”
 II. Arguments Presented by Parties
 The hearing officer appointed to hear this matter concluded that the
Disciplinary Commission failed to meet its burden of proving the alleged
violations by clear and convincing evidence.[1] The Commission has
petitioned for review of the hearing officer’s findings, arguing that the
hearing officer erred in failing to find that:
 1. the respondents’ television advertisements contain a
 statement, opinion, representation or implication regarding
 the quality of respondents’ legal services in violation of
 Prof.Cond.R. 7.1(d)(4), and,

 2. the respondents’ television advertisements contain an implied
 endorsement of the respondents’ law practice in violation of
 Prof.Cond.R. 7.1(d)(3).

 The respondents’ position concerning the review of this matter
includes two arguments. First, in Respondents’ Petition for Review of
Hearing Officer’s Ruling which Excluded Expert Testimony, they argue the
hearing officer improperly excluded expert testimony “… with regard to the
interpretation, application and constitutionality of [Prof.Cond.R.]
7.1(d)(3) and 7.1(d)(4).” We deny the respondents’ petition and uphold
the hearing officer’s exclusion of this testimony. The Constitution of the
State of Indiana vests this Court with exclusive jurisdiction in matters
involving the admission and discipline of attorneys. Ind.CONST., art. VII,
Section 4; Matter of Kesler, 272 Ind. 161, 163, 397 N.E.2d 574, 575 (1979).
 The testimony of expert witnesses on the subject of the practice of law is
not proper evidence, as it is the province of this Court to determine what
the practice of law is. See Matter of Perrello, 386 N.E.2d 174, 179 (Ind.
1979).
 The respondents also filed a brief in opposition to the Commission’s
petition for review, therein arguing that their advertisements are
protected by the commercial speech doctrine recognized by the federal
courts under the First Amendment to the United States Constitution, and are
also protected by Article I, Section 9 of the Indiana Constitution. We
will address these issues infra.
 III. Prof.Cond.R. 7.1(d)(4): Improper Representation or Implication
Regarding
 the Quality of Legal Services.

 Indiana Professional Conduct Rule 7.1(d) provides:
 A lawyer shall not, on behalf of himself, his partner or
 associate, or any other lawyer affiliated with him or his firm,
 use or participate in the use of any form of public
 communication which:

 ***

 (4) contains a statement or opinion as to the quality of the
 services or contains a representation or implication regarding
 the quality of legal services; …

 The evidence presented clearly and convincingly establishes that the
respondents’ advertisements contain a representation or implication
regarding the quality of their legal services. Though the respondents’
advertisements contain a brief printed disclaimer, “No specific result
implied,” the advertisements imply that clients represented by the
respondents’ law firm will achieve favorable results based solely upon the
respondents’ reputation with insurance companies. The respondents’
advertisements create an impression that the claims they handle are
settled, not because of the specific facts or legal circumstances of the
claims, but merely by the mention of the name of the respondents’ firm to
insurance companies.
 This Court has found that similar advertisements violated Prof.Cond.R.
7.1(d)(4). In Matter of Anonymous, 689 N.E.2d 442 (Ind. 1997), where the
attorney’s advertisement claimed his law firm was a “premier personal
injury law firm” with “30 years trial experience and a support network to
rival that of a larger city firm” and “the track record and resources you
need to win a settlement,” we noted the danger underlying broad unsupported
claims:
 A person unfamiliar with personal injury litigation might
 understand the advertisement to promise that any claim or case
 handled by the respondents would result in a favorable
 settlement. Anonymous at 443.

Here, the respondents’ advertisements suggest the very sort of improper
implication of which we cautioned in Anonymous.
 Similarly, in Matter of Wamsley, 725 N.E.2d 75 (Ind. 2000) we found a
violation of Prof.Cond.R. 7.1(d)(4) where an attorney’s printed
advertisement stated, “… my reputation, experience and integrity … result
in most of our cases being settled …” Like the advertisements in Anonymous
and Wamsley, the respondents’ advertisements suggest insurance companies
will be inclined to settle claims handled by their firm.[2]
 The intent and purpose behind our Rules of Professional Conduct is to
create a high standard for communicating with the public about legal
services. The Preamble to the Rules of Professional Conduct provides:
 The legal profession’s relative autonomy carries with it special
 responsibilities of self-government. The profession has a
 responsibility to assure that its regulations are conceived in
 the public interest and not in furtherance of parochial or self-
 interested concerns of the bar. Indiana Rules of Court, West
 Publishing (2003), p. 336.

 The United States Supreme Court recognized this same concept when it
stated:
 [B]ecause the public lacks sophistication concerning legal
 services, misstatements that might be overlooked or deemed
 unimportant in other advertising may be found quite
 inappropriate in legal advertising. Bates v. State Bar of
 Arizona, 433 U.S. 350, 383, 97 S.Ct. 2691, 2709 (1977).

 Accordingly, we find respondents’ advertisements violate Prof.Cond.R.
7.1(d)(4).[3]
 IV. Respondents’ Claims
 The respondents contend that their advertisements are protected by the
commercial speech doctrine recognized by the federal courts under the First
Amendment to the United States Constitution, and are also protected by
Article I, Section 9 of the Indiana Constitution. We reject both of these
arguments.
 “There can be no constitutional objection to the suppression of
commercial messages that do not accurately inform the public about lawful
activity. The government may ban forms of communication more likely to
deceive the public than to inform it.” Central Hudson Gas & Elec. Corp. v.
Public Serv. Comm’n of N.Y., 447 U.S. 557, 563, 100 S.Ct. 2343, 2350
(1980). Because we have found the respondents’ advertisements unfairly
imply a particular favorable result in cases involving insurance companies,
the advertisements are more likely to deceive the public than inform it and
thus are not protected under the First Amendment’s commercial speech
doctrine.
 Likewise, even if Article I, Section 9 of the Indiana Constitution[4]
is viewed as “… more comprehensive than the first amendment,”[5] it is not
so comprehensive as to permit deceptive and misleading communication in the
context before this Court. While the right to speak clause is broad, the
responsibility clause ensures:

 … despite the presence of the right to speak clause, the state
 retains its delegated authority to promote the peace, safety and
 well-being of Hoosiers by punishing expression that could be
 thought to undermine those ends. Whittington v. State, 669
 N.E.2d 1363 (Ind. 1996) (fn 6).

We hold that the regulation of attorney advertising is consistent with the
responsibility clause of Article I, Section 9. “The selection of an
attorney by a lay person must result from an informed choice, free of
influences or persuasions.” Matter of Guerrero, 482 N.E.2d 1139, 1140 (Ind.
1985). The advertisements put forth by the respondents do not promote an
informed choice, but instead tend to mislead the public. Accordingly, we
find the respondent’s state constitutional argument unpersuasive.
 V. Prof.Cond.R. 7.1(d)(3): Endorsement
 Indiana Professional Conduct Rule 7.1(d)(3) prohibits an attorney from
using any form of public communication which contains an endorsement of a
lawyer. The parties stipulated that none of the four advertisements
contain an express endorsement of the respondents. The stipulation,
however, does not address the issue of an implied endorsement. We find
that the “Victim’s Rights” advertisement contains an implied endorsement of
the respondents.
 We have not had the opportunity to define “endorsement” as used in
Prof.Cond.R. 7.1(d)(3). Accordingly, as with statutory construction, we
give undefined words their plain, ordinary, and usual meaning, unless the
construction is plainly repugnant to the intent or the context of the rule
under consideration. Hinojosa v. State, 781 N.E.2d 677, 680 (Ind. 2003).
The hearing officer found that:
 “Endorse” means “to give approval to; support; sanction [to
 endorse a candidate]” or “to state, as in an advertisement, that
 one approves of (a product, service, etc.), often in return for
 a fee” while an “endorsement” is “a statement endorsing a
 person, product, etc., as in an advertisement.” Webster’s New
 World Dictionary, p. 449 (3rd College e. 1994) (third and
 second, subpart c definitions). “Endorsement” also has been
 defined as “[a]pprobation; sanction; support: sought the union’s
 endorsement.” The American Heritage College Dictionary, p. 454
 (Houghton Mifflin 3rd ed. 1993) (third definition) (Joint
 Exhibit 24); see also Webster’s New Twentieth Century
 Dictionary, p. 600 (Simon and Schuster, 2d., 1983) (“endorsement
 … 4. approval; sanction.”).

 In the advertisements, Vaughn tells viewers, “[t]he insurance
companies know the name Keller & Keller,” “[t]ell the insurance companies
you mean business. Tell them you’ve called Keller & Keller…,” and, finally,
“[t]hey go after your rights piece by piece by piece until you get every
dollar you deserve.” The purpose of these statements is to reinforce the
notion established in the “Strategy Session” advertisement that the name
Keller & Keller alone achieves results. In advising that the respondents
“go after your rights piece by piece by piece” until every possible dollar
is recovered, Vaughn clearly is supporting the respondents and their
ability to secure a positive result for the client, and even implies by
these statements that, based on past successes, this is the respondents’
usual outcome. Vaughn clearly implies that Keller & Keller can provide
the services that the viewers need. He is not just encouraging the public
to seek legal assistance, he is endorsing their contact with the firm of
Keller & Keller because of their reputation. There is a distinction
between simply suggesting that viewers call Keller & Keller, and suggesting
that viewers who call Keller & Keller will obtain a favorable outcome.
Because of Vaughn’s endorsement of the respondent’s services, we find the
respondents violated Prof.Cond.R. 7.1(d)(3).
 VI. Sanction
 Having found the respondents guilty of misconduct, we must now
determine the appropriate sanction. The hearing officer noted the great
lengths that the respondents went to research the propriety of their
advertisements. Nonetheless, the respondents’ advertisements were
defective. As in Matter of Wamsley, the respondents’ advertisements
divest the public of the opportunity to make a decision on whether to hire
them based on facts about the respondents and their qualifications.
Accordingly, for the protection of the public, we find that the
respondents’ faulty advertisements warrant the same sanction imposed in
Wamsley, that being a public reprimand.
 Accordingly, the respondents, James R. Keller and S. Jack Keller, are
hereby reprimanded and admonished for the misconduct set forth herein.
 The Clerk of this Court is directed to provide notice of this order in
accordance with Admis.Disc.R. 23(3)(d), to the hearing officer, and to the
clerk of the United States Court of Appeals for the Seventh Circuit, the
clerk of each of the United States District Courts in this state, and the
clerks of the United States Bankruptcy Courts in this state.
 Costs of this proceeding are assessed equally against the respondents.

 DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.
 SHEPARD, C.J., not participating.
-----------------------
[1] Matter of Siegel, 708 N.E.2d 869 (Ind. 1999)
 [2] The advertising campaign in question here has also been the
subject of litigation in North Carolina. In Farrin v. Thigpen, 173
F.Supp.2d 427 (M.D.N.C. 2001), the federal district court found that the
“Strategy Session” spot created “… an unjustified expectation that the
lawyers advertised can obtain settlements based solely on their reputation
and the insurance industry fear or reluctance to try a case against them.”
Farrin at 440.

 [3]As part of his finding that the Commission failed to carry its
burden of proof, the hearing officer found the Commission failed to produce
any evidence the public sustained actual harm because of the
advertisements. We find, however, that such a showing by the Commission was
not necessary in order to find a violation of Prof.Cond.R. 7.1(d). The
risk of deceiving the public is sufficient to establish a violation of
Prof.Cond.R. 7.1(d). See, e.g., Matter of Anonymous, 689 N.E.2d 442 (Ind.
1997) (advertisements that a person might misunderstand to promise that any
claim handled by the attorney would result in a favorable settlement were
improper); Matter of Anonymous, 775 N.E.2d 1094, 1095 (Ind. 2002) (holding
no requirement of actual deception, but only risk of deception, to support
Prof.Cond.R. 7.1(b) violation).

[4] Article I, Section 9 provides:

No law shall be passed, restraining the free interchange of thought and
opinion, or restricting the right to speak, write, or print, freely, on any
subject whatever: but for abuse of that right, every person shall be
responsible.

[5] Randall T. Shepard, Second Wind for the Indiana Bill of Rights, 22
IND.L.REV. 575, 581 n. 39 (1989).