FOR THE RESPONDENT FOR THE INDIANA SUPREME COURT

DISCIPLINARY COMMISSION 

Lee Pettay Donald R. Lundberg, Executive Secretary

2532 East Tenth Street Robert C. Shook, Staff Attorney

Bloomington, IN 47408 115 West Washington Street, Ste. 1060

Indianapolis, IN 46204

____________________________________________________________________________

IN THE

SUPREME COURT OF INDIANA

IN THE MATTER OF ) 

) Case No. 53S00-9502-DI-230

DOLLIE STAFFORD MANNS )

________________________________________________________________________

DISCIPLINARY ACTION 

________________________________________________________________________

Per Curiam

The respondent, Dollie Stafford Manns, has been charged with violating the 
Rules of Professional Conduct for Attorneys at Law 
by converting an investor’s funds to her own use.  This Court appointed a hearing officer pursuant to Ind.Admission and Discipline Rule 23, Section 11 (b), who, following  hearing, tendered his findings of fact and conclusions of law to this Court, therein finding misconduct.  The respondent has petitioned this Court for review of the hearing officer’s report.  The review process employed in disciplinary matters entails a 
de novo
 examination of all matters presented for consideration.  
In re Young, 
546 N.E.2d 819 (Ind. 1989)
.  
This Court remains the ultimate fact finder and final arbiter of misconduct and sanction.  
In re Geisler
, 614 N.E.2d 939 (Ind. 1994); 
In re Smith
, 579 N.E.2d 450 (Ind. 1991); 
In re Gemmer
, 566 N.E.2d 528 (Ind. 1991).  The respondent’s objections to the findings and conclusions of the hearing officer will be resolved in this review process.

  The respondent was admitted to the bar of this state in 1979 and is thus subject to this Court’s disciplinary jurisdiction.  At the time of the events underlying this case, the respondent practiced law in Bloomington, Indiana, in association with her husband in an entity designated “Manns and Manns” (hereinafter the “firm”).   The respondent and the Commission stipulate to the following facts:   On April 6, 1990, an individual (hereinafter the “investor”) issued a personal check payable to the order of the firm in the amount of $20,000.  The check was deposited into the firm’s interest-bearing “escrow” account, to which both the respondent and her husband had access.  After the deposit on that date, the account’s balance was $20,099.85.  Between April 6, 1990, and July 31, 1990, only one other deposit, for $957.34, was placed in the account.  During that period, the respondent and/or her husband drew drafts on the account totaling $21,071.14, leaving a balance of $2.17.  Fifteen of the drafts, totaling $17,075.00, were written to the respondent, her husband, or to the firm. 

In addition to the facts stipulated, we now find that, prior to April 6, 1990, the respondent’s husband assisted the investor, as her attorney, in closing two real estate transactions.  After the transactions were completed in late March or early April of 1990, the husband distributed $18,550 to the investor, $18,350 of which she deposited into her personal bank account on April 5, 1990. That day, the respondent accompanied the investor to the investor’s bank, discussing an international platinum transaction the respondent was planning.   The respondent told the investor that the investor could invest in the transaction, but that “investment capital” for the venture was needed by the end of that business week.  The respondent mentioned some other individuals who were interested in investing in the transaction.  After considering the option for a day or so, the investor agreed to invest $20,000 in the venture, understanding after discussion with the respondent that $8,000 of her investment would be used to obtain platinum samples.  The balance was to be held in a “special account” for the closing of the transaction and for the investor’s protection.   The terms of their agreement were reduced to writing by the respondent.  Although the investor’s signature does not appear on the written agreement, the evidence adduced at hearing indicates that the investor was aware of and agreed to the terms contained therein.  The agreement provided that the platinum transaction would be completed by April 14, 1990, and that, after that date, the $20,000 would be returned to the investor.  The investor was to receive “full compensation” for the transaction within three months, in the amount of $200,000. 

The respondent never informed the investor that the funds held in escrow would be used for any purpose other than the purchase of platinum and expenses associated therewith.  As of hearing in this matter, the respondent had not obtained the platinum nor had she refunded to the investor any of the $20,000, despite the investor’s demand for return of the funds. 

Indiana Professional Conduct Rule 8.4(b) provides that it is professional misconduct for a lawyer to commit a criminal act which reflects adversely on her honesty, trustworthiness, or fitness as a lawyer in other respects.  By converting the investor’s $20,000 to uses other than those agreed to by the investor and by failing to return the funds pursuant to the parties’ understanding and after the investor demanded return,  the respondent violated Ind.Professional Conduct Rule 8.4(b).   Her conversion of the investor’s funds violated Prof.Cond.R. 8.4(c) in that it represents conduct involving dishonesty, fraud, deceit and misrepresentation. 

In her petition for review, the respondent argues that application of Prof.Cond.R.  8.4(b) in this case violates the Fourteenth Amendment of the United States Constitution because the rule is overbroad and unconstitutionally vague and that its application denies her due process.

The respondent’s arguments are without merit.  This Court has held that the procedures set up in the Admission and Discipline Rules provide a reasonable and logical manner of approaching misconduct, provide appropriate notice and time for preparation, are eminently fair and that disciplinary rules and actions taken under them are not unconstitutional.  
In re Stivers
, 260 Ind. 120, 129, 292 N.E.2d 804 (Ind. 1973).  The concept of  “due process,” within the unique framework of disciplinary actions, requires notice of the charges and an opportunity to be heard.  
In re Roberts
, 442 N.E.2d 986, 988 (
other citations omitted
).
  The respondent here was afforded all the opportunities and protections provided by the procedures contained in Ind.Admission and Discipline Rule 23 and thus was not denied due process in this action. 

The respondent further argues that she was denied due process and a right to fair trial because of incorrect findings made by the hearing officer and errors in the 
Verified Complaint for Disciplinary Action
.
(footnote: 1)  Assuming, 
arguendo
, that we accept as true the respondent’s allegations, the errors are insignificant and do not impact our conclusion that the respondent engaged in misconduct.  The respondent is attempting to diminish the totality of the circumstances by artfully isolating its components.  We do not embrace this analytical approach in disciplinary matters.  This Court assesses disciplinary misconduct in the totality of circumstances found in the case.
 
 In re Moore
, 665 N.E.2d 40 (Ind. 1996).  Our conclusions do not hinge on inconsequential inconsistencies. 

Having found misconduct, we must now assess an appropriate disciplinary sanction.
(footnote: 2)   We consider several factors while ascertaining an appropriate sanction, including the nature of the misconduct, the lawyer’s state of mind underlying the misconduct, actual or potential injury flowing from the misconduct, the duty of this Court to preserve the integrity of the profession, the risk to the public in allowing the respondent to continue in practice, and any mitigating or aggravating factors.  
In re Heamon, 
622 N.E.2d 484 (Ind. 1993).
  The respondent’s conversion of the investor’s funds was intentional and for the respondent’s own benefit.  She exploited the investor by opportunistically initiating a conversation with her about the “investment” knowing, by reason of her association with the investor’s lawyer, that the investor had just closed a lucrative real estate transaction.  Her actions indicate a predilection to take advantage of unsuspecting clients of the firm and thus impart a strong negative implication to her fitness as a lawyer.  We therefore conclude that, for the protection of the profession and the public, 
she should be removed from the practice of law. 

It is, therefore, ordered that the respondent, Dollie Stafford Manns, be suspended from the practice of law for a period of not less than three (3) years, beginning November 24, 1997, after which she shall be eligible for reinstatement, provided she satisfies the requirements of Admis.Disc.R. 23(4). 

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the Federal District Courts in this state, and the clerk of the United States Bankruptcy Court in this state with the last known address of respondent as reflected in the records of the Clerk. 

Costs of this proceeding are assessed against the respondent. 

FOOTNOTES
1: 
For example, the respondent alleges that the 
Verified Complaint
 incorrectly alleges and the hearing officer incorrectly found that the date of issuance of the $20,000 check to the firm was April 4, 1990, and that the correct date as stipulated was April 5, 1990. 

2: 
In its 
Verified Complaint
, the Commission also charged that the respondent violated Prof.Cond.R. 1.8 (a), which provides, in relevant part, that a lawyer shall not enter into a business transaction with a client unless the transaction is fair and reasonable to the client; fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client; the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and the client consents in writing thereto.

In her 
Petition for Review
, the respondent argues that there was no attorney-client relationship between herself and the investor and thus that Prof.Cond.R. 1.8(a) is not applicable.  It is undisputed that the investor had an attorney-client relationship with the respondent’s husband, with whom the respondent was associated in law practice. However, the Commission presented no evidence that there existed an attorney-client relationship between the respondent and the investor.  The record reveals that the investor could not specifically recall any legal services the respondent had provided to her.  There was no evidence that the investor sought out the respondent for the provision of legal services.  Professional Conduct Rule 1.10(a) provides that, while lawyers are associated in a firm, none of them shall represent a client if he knows or should know in the exercise of reasonable care and diligence that any one of them practicing alone would be prohibited from doing so by Prof.Cond.R. 1.7, 1.8(c), 1.8(k), 1.9, or 2.2.  Professional Conduct Rule 1.8(a) is not expressly incorporated into that “imputed disqualification” rule.  We therefore find no violation of Prof.Cond.R. 1.8(a) because there was insufficient evidence to find that the investor was the respondent’s client.