**In the Matter of the Honorable Jerry F. JACOBI, Judge of the Clark Superior Court.**

**No. 10S00–9903–JD–185.**

Supreme Court of Indiana.

Sept. 9, 1999.

Raymond J. Hafsten, Jr., Indianapolis, Indiana, Attorney for Respondent Hon. Jerry F. Jacobi.

Margaret W. Babcock, Indianapolis, Indiana, Attorney for the Commission on Judicial Qualifications.

### JUDICIAL DISCIPLINARY ACTION

#### PER CURIAM.

This matter comes before the Court as a result of a judicial disciplinary action brought by the Indiana Commission on Judicial Qualifications ("Qualifications Commission") against the Respondent herein, Jerry F. Jacobi, judge of Clark Superior Court 1. Article 7 Section 4 of the Indiana Constitution and Indiana Admission and Discipline Rule 25 give the Indiana Supreme Court original jurisdiction over this matter.

Subsequent to the filing of formal charges by the Qualifications Commission, the parties jointly tendered a Statement of Circumstances and Conditional Agreement for Discipline which the Court approved by written order. The parties have agreed to the following background information and stipulated facts.

### Background

The Clark County Board of Commissioners, the City of Jeffersonville, the City of Charlestown, the Town of Clarksville, the Clark County Council, the Town of Sellersburg, the Town of Borden, and the Town of Utica adopted in 1998 an Interlocal Agreement for the sharing of governmental and management functions over the federal excess property known as the Indiana Army Ammunition Plant (INAAP). Pursuant to

---

the Interlocal Agreement, these governmental bodies created the INAAP Reuse Authority Board to manage the Ammunition Plant's 4,600 acres when the Army transferred the property to the Reuse Authority.

In April 1998, again pursuant to the Interlocal Agreement, the Town of Utica and the City of Charlestown appointed James Witten to the Reuse Authority Board. On August 10, 1998, the Clark County Commissioners removed Witten from the Reuse Authority Board. Witten's removal by the Commissioners created a dispute among the County Commissioners and the cities and towns who were parties to the Interlocal Agreement.

On August 12, 1998, the Town of Utica, by attorney Larry Wilder, filed a petition for a temporary restraining order (TRO), seeking to restrain the Commissioners from removing James Witten and from appointing a successor.

On that same day, Respondent granted the request for a TRO after an *ex parte* conference with Wilder and the Utica Town Board president, Glen Murphy. Respondent also set a hearing for August 21. Then, on August 13, the Respondent *sua sponte* disqualified himself and named a panel of three potential special judges from outside Clark County. After the striking process did not produce a special judge, the Honorable Richard G. Striegel of the Floyd Superior Court was assigned as special judge by the Administrative District Assignment Judge. A hearing on the preliminary injunction was held on August 21 before Judge Striegel. He issued an order, pursuant to the agreement of all parties, which returned James Witten to the Reuse Authority Board.

### Stipulations of the Parties

On the morning of August 11, the day before the TRO petition was filed and the day after the Commissioners removed Witten from the Reuse Authority, a meeting took place. Present at the meeting were the Utica Town Board President (Glen Murphy), the Jeffersonville Mayor, the Utica Town Attorney (Larry Wilder), the Charlestown City Attorney, the Jeffersonville City Attorney, James Witten, and Reuse Authority Board member Ned Phau. During the meeting, the parties discussed the prospect of filing a TRO petition in response to the Commissioners' removal of Witten.

Over the noon hour, Respondent had lunch with his bailiff, Harry Wilder, at a Jeffersonville Pizza Hut, during which they were joined by Glen Murphy. A witness has stated she was seated two tables away and overheard them discussing a "lawsuit." The Respondent's statement is that the discussion, in which he did not participate, was about a federal lawsuit.

On the evening of August 11, Respondent was again in the company of Murphy, and of the attorney for the Town of Utica, Larry Wilder (bailiff Wilder's son), at a local establishment. They were awaiting an evening swearing-in by Respondent of the new Utica Town Marshall. After the swearing-in ceremony, the Utica Town Council met in regular session. At that Town Council meeting, the proposed filing of the TRO petition was approved. Respondent left the evening event before the Utica Town Council discussed the lawsuit.

The next day, Larry Wilder presented Respondent with the petition for a temporary restraining order, which he filed in the office of the clerk at 4:28 p.m. before taking it to the judge's chambers. Court offices generally close at 4:30. Wilder and Glen Murphy then met with Respondent in the judge's private office for approximately one hour, during which time they discussed the need for the TRO. As noted above, the TRO petition was ultimately granted by Respondent.

Contrary to Trial Rule 65(B) pertaining to temporary restraining orders, Respondent granted the *ex parte* relief without a written certification from Larry Wilder indicating the efforts he made to serve the Commissioners or their counsel with notice, or of the reasons why notice should not be required. Although the parties cannot agree on whether any service of notice actually was made, Larry Wilder has stated that he directed his secretary to walk the papers to the office of the attorney for the Commissioners at the same time Wilder walked to the courthouse to seek the TRO, and she states she did so. However, the attorney for the Commissioners, Daniel Moore, states that no notice was

given on August 12 of the petition or of any hearing thereon, and that he did not know Wilder was seeking a TRO that afternoon.

Respondent made no independent effort to contact Moore and, again, Wilder made no certification of his efforts to give notice. Moore's telephone number was known to Respondent and to Wilder and Moore had been in the Clark Superior Court 1 courtroom on a case with a special judge until sometime between 4:00 and 4:30. Moore had conversed with Respondent just prior to his 3:30 hearing before the special judge. Respondent stated in his order granting the TRO, "[T]he Court finds that the Clark Commissioners, by its attorney, Daniel Moore, has been served with notice of this petition by same being provided to him in person."

Respondent was at the time of the granting of the petition seeking the TRO, and for many years preceding that action, a close personal friend of Murphy and of the Wilder family. He had socialized with Larry Wilder and had lived for a period of time in the senior Wilder's house. At the time the TRO was issued, Respondent employed Wilder's father, Harry, as his bailiff. He previously had employed another son of Harry Wilder as his probation officer.

Respondent recused himself from this case after naming a panel of proposed special judges from outside Clark County, contrary to the applicable Local Rule 25, which calls for the district's Assignment Judge to appoint a special judge within five days of a regular judge's disqualification. He has stated he recused himself because he felt no Clark County judge should be involved in the merits of this political dispute.

The parties agree that the failure to obtain from Wilder his certification that notice had been made, or of what efforts he had made to give notice, or of the reasons notice was not required, along with the judge's failure to make a simple inquiry to attorney Moore's office to determine whether he was available to meet with the judge and Wilder about the petition seeking a TRO, joined with the close personal relationship among Wilder, Murphy, and Respondent, including their significant contacts on the preceding day during which the TRO petition was being planned by Mur-

phy, Wilder, and other Clark County municipalities that subsequently joined the Utica litigation, created a significant appearance of impropriety and potentially threatened the public's confidence in the judicial system.

The parties agree that Respondent violated Canon 1 of the Code of Judicial Conduct, which generally requires judges to uphold the integrity and independence of the judiciary; Canon 2(A), which generally requires judges to avoid impropriety and the appearance of impropriety, to respect and comply with the law, and to act at all times in a manner which promotes the public's confidence in the integrity and impartiality of the judiciary; and Canon 3(B)(2), which generally requires judges to be faithful to the law.

*Sanction*

The parties have further agreed, as does the Court, that the appropriate sanction for this misconduct is a three day suspension from office without pay. The costs of this proceeding are assessed against Respondent.

All Justices concur.