**In the Matter of Larry O. WILDER.**

**No. 10S00–0008–DI–495.**

Supreme Court of Indiana.

March 19, 2002.

James H. Voyles, Indianapolis, IN, for the Respondent.

Donald R. Lundberg, Executive Secretary, David B. Hughes, Trial Counsel, Indianapolis, IN, for the Indiana Supreme Court Discipinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

Larry O. Wilder, an attorney admitted to the practice of law in this state in 1986, who practices in Clark County, knowingly represented a client adverse to one of his former clients in a matter substantially related to matters in which he had represented the former client. In an unrelated matter, he obtained an order granting to his client a temporary restraining order following an impermissible *ex parte* meeting with the judge presiding in the case. For these ethical transgressions, we suspend him from the practice of law.

This matter is before us upon the duly-appointed hearing officer's findings of fact and conclusions of law. The Disciplinary Commission has petitioned this Court for review of the hearing officer's findings relative to Count II of the verified complaint. Where a party petitions this Court for review of the hearing officer's report, our review is *de novo* in nature and entails a review of the entire record before us. *Matter of Manns,* 685 N.E.2d 1071 (Ind. 1997), *Matter of Young,* 546 N.E.2d 819 (Ind.1989).

Within this review context, as to Count I we now find that the respondent represented Fox and Lindsey both individually and jointly while the two were an unmarried couple. The representations encompassed various legal matters. The couple later entered a partnership to run a restaurant. The respondent provided to them legal services in connection with this venture. Later, when the couple's relationship soured, the respondent represented Fox in the dissolution of their affairs, including the partnership. In representing Fox, the respondent used papers and documents pertaining to Lindsey's business interests and properties which Lind-

sey previously had given to him in the course of their attorney-client relationship.

The Commission charged that the respondent engaged in an impermissible conflict of interest violative of Prof.Cond.R. 1.7, 1.8(b), and 1.9.[1] The hearing officer found only that the respondent violated Prof.Cond.R. 1.9.

Professional Conduct Rules 1.7 and 1.8 deal with conflicts of interest that may arise concerning clients a lawyer has simultaneously, whereas Prof.Cond.R. 1.9 addresses conflicts of interest arising between a lawyer's present and former clients. The hearing officer found that the respondent first represented both Fox and Lindsey; then, during the dissolution of their legal affairs, chose to represent Fox in matters directly adverse to Lindsey. At that point, Lindsey became the respondent's former client. There is nothing in the record indicating that Lindsey was the respondent's client following Lindsey's break from Fox. Accordingly, the respondent violated Prof.Cond.R. 1.9(a) by representing Fox in the same or a substantially related matter in which Fox's interests were materially adverse to the interests of the respondent's former client, Lindsey, where there is no indication that Lindsey consented to the adverse representation. In so representing Fox, the respondent used information relating to his representation of Lindsey to the disadvantage of Lindsey under circumstances not permitted by Prof.Cond.R. 1.6 and 3.3, in violation of Prof.Cond.R. 1.9(b).

■ The Commission also charged that the respondent's conduct in Count I violated Prof.Cond.R. 4.4, which prohibits lawyers from using means that have no substantial purpose other that to embarrass, delay, or burden a third person, and Prof. Cond.R. 8.4(b), which prohibits lawyers from engaging in criminal acts that reflect adversely on their honesty, trustworthiness, or fitness as lawyers in other respects. Both of these charges arose from allegations made by Lindsey against the respondent. The hearing officer found that Lindsey (and Fox as well) were of "limited credibility" and therefore concluded that the Commission had failed to prove these charges by clear and convincing evidence. The Commission did not petition

1. Professional Conduct Rule 1.7 provides:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Professional Conduct Rule 1.8(b) provides:

(b) A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation, except as permitted or required by Rules 1.6 and 3.3.

Professional Conduct Rule 1.9 provides:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.

for review of this adverse finding, and we hereby adopt the hearing officer's findings as to the two charges.

Pursuant to Count II, we now find that during relevant times, the respondent was the town attorney for Utica, Indiana. On August 12, 1998, in his capacity as counsel for the town of Utica, the respondent prepared a declaratory judgment complaint and a request for temporary injunction seeking that the Clark County Commissioners be enjoined from replacing the town of Utica's appointment to a certain local board. The respondent completed the complaint sometime after 4:00 pm. It was prepared for filing in the Clark Superior Court No. 1, where Judge Jerry Jacobi presided. The respondent's appearance indicated that copies of the pleadings had been served either "in person" or by "First Class Mail." At about the same time, the respondent instructed his secretary to take an unfiled copy of the pleadings and unsigned proposed order to the office of the attorney for the Clark County Commissioners, which was located two blocks from the respondent's office. The secretary delivered the papers to a "dark haired" woman in the commissioners' attorney's office.

Meanwhile, sometime after 5:00 pm, the respondent filed the pleadings and met with the judge. The judge signed the temporary injunction order. The next morning, the respondent's secretary delivered copies of the signed order to the commissioners and their attorney.

This Court found that Judge Jacobi violated Canons 1, 2(A), and 3(B)(2) of the *Code of Judicial Conduct* for his role in this very same incident. *Matter of Jacobi,* 715 N.E.2d 873 (Ind.1999).[2] We suspended him for three days for those violations.

The Commission charged that the respondent violated Prof.Cond.R. 3.5 by communicating *ex parte* with a judge when not permitted by law to do so. It also charged that he violated Prof.Cond.R. 8.4(f) by knowingly assisting a judge in conduct that violated the *Code of Judicial Conduct.* The hearing officer concluded that Ind.Trial Rule 65 (governing notice and hearings for temporary restraining orders) "specifically permits an attorney to secure a temporary restraining order without notice to an adverse party," and, accordingly, found no misconduct.

Trial Rule 65(B) provides, in relevant part:

[a] temporary restraining order may be granted without written or oral notice to the adverse party or his attorney only if:

(1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition; and

(2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give notice and the reasons supporting his claim that notice should not be required.

While it is true that T.R. 65(B) permits the granting of a temporary restraining order without notice, it only allows such grant under certain specified circumstances. It

---

**2.** In *Jacobi,* we found:

The parties agree that Respondent violated Canon 1 of the *Code of Judicial Conduct,* which generally requires judges to uphold the integrity and independence of the judiciary; Canon 2(A), which generally requires judges to avoid impropriety and the appearance of impropriety, to respect and comply with the law, and to act at all times in a manner which promotes the public's confidence in the integrity and impartiality of the judiciary; and Canon 3(B)(2), which generally requires judges to be faithful to the law. *Matter of Jacobi,* 715 N.E.2d 873, 875.

is true that the respondent sent his secretary to opposing counsel's office with copies of the pleadings at about the same time that the respondent was meeting with the judge to have the TRO order signed, but that act cannot be said to have been calculated to provide opposing counsel with meaningful notice. It is also clear that the respondent did not accomplish the steps necessary to permit dispensing with notice to the adverse party prior to seeking an *ex parte* TRO. He did not show that immediate and irreparable injury, loss, or damage would result before the commissioners and their attorney could be notified. He also failed to certify to the court in writing the efforts he made to give notice or the reasons supporting any claim that notice should not be required. Accordingly, we find that the respondent violated Prof. Cond.R. 3.5 when he obtained the *ex parte* order of temporary injunction from Judge Jacobi without complying with the provisions of T.R. 65(B). We find further that the respondent violated Prof.Cond.R. 8.4(f) by assisting Judge Jacobi in conduct that violated the *Code of Judicial Conduct.*

The respondent would have us believe that by instructing his secretary to personally deliver a copy of the unfiled TRO petition and proposed order to opposing counsel's office at about the same time the respondent was meeting with the judge satisfied the notice requirements contained in T.R. 65(B). However, the hearing officer's findings indicate that opposing counsel did not learn of the respondent's pleading on August 12. On August 16 (the next date opposing counsel was in his office), he was unable to determine whether any of the copies of the pleadings had arrived on August 12. While the pleadings were being walked to opposing counsel's office to be delivered to persons unknown, the respondent was contemporaneously meeting *ex parte* with the judge to obtain relief. This incident is remarkably similar to that

in another case where we found an impermissible *ex parte* contact. *See Matter of Anonymous,* 729 N.E.2d 566 (Ind.2000) (lawyer mailed petition for emergency custody to opposing counsel, then walked to courthouse and met with judge to get relief sought). Because such last-minute delivery of the papers to opposing counsel is not adequate notice, the respondent was required to satisfy the conditions for relief with no notice; *i.e.,* claim risk of immediate and irreparable loss and include a certificate regarding notice or lack thereof. He failed to do either.

■ We must now determine an appropriate sanction for the respondent's misconduct. We suspended Judge Jacobi for three days for this incident. We conclude that the respondent should suffer the same discipline.

It is, therefore, order that the respondent, Larry O. Wilder, is suspended from the practice of law for a period of three (3) days, effective April 22, 2002. At the conclusion of that period, he shall be automatically reinstated to the practice of law in this state.

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d), to provide a copy of this Order to the Hon. Leslie Shively, and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the United States District Courts in this state, and the clerks of the United States Bankruptcy Courts in this state with the last known address of respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.