**In the Matter of Franklin A. WEBSTER.**

No. 02S00–0102–DI–94.

Supreme Court of Indiana.

Oct. 23, 2002.

Robert L. Thompson, Fort Wayne, IN, for the respondent.

Donald R. Lundberg, Executive Secretary, Dennis K. McKinney, Indianapolis, IN, for the Indiana Supreme Court Disciplinary Commission.

PER CURIAM.

Attorney Franklin A. Webster failed to keep a client adequately informed about the status of the client's legal matters and commingled with his own money funds in which both he and the client claimed an interest. For that, we find today that he should be suspended from the practice of law.

■ This case commenced with the filing of the Indiana Supreme Court Disciplinary Commission's *Verified Complaint for Disciplinary Action.* This Court then appointed a hearing officer who conducted a full evidentiary hearing and thereafter filed with this Court his findings of fact and conclusions of law. The Commission has petitioned this Court for review of those findings, pursuant to Ind.Admission and Discipline Rule 23(15), therein arguing that the hearing officer should have found that the respondent, in addition to commingling client funds with his own, converted the funds as charged by the Commission in its complaint. Where a party petitions this Court for review of the hearing officer's report, our review is *de novo* in nature and entails examination of the entire record presented. *Matter of Wilder*, 764 N.E.2d 617 (Ind.2002).

The respondent was admitted to the bar of this state in 1961 and practices law in Fort Wayne, Indiana. We now find that Summit Account and Computer Service, Inc., d/b/a General Collections, Inc. ("GCI"), was a licensed Indiana collection agency in Fort Wayne, and the respondent was the principal owner, president, and administrative officer of GCI. He was also

the sole proprietor of Frank A. Webster & Associates, which conducted a collection-law practice. The respondent and GCI shared the same address but maintained separate offices, telephone lines, bank accounts, records, and accounting systems.

A leasing company which financed the purchase of business personal property through leases generated enough delinquent accounts that it employed several lawyers and collection agencies for its collection work. The leasing company contacted the respondent to establish direct referral of accounts. The respondent advised the leasing company that the referral should be to GCI. The leasing company's forwarding letter, sending accounts directly to GCI for collection, set forth the commission applicable in the event of successful collection; however, it did not cover or pertain to the question of fees for defense of counterclaims, pursuing claims in bankruptcy, appeals, replevin actions for the recovery of personal property, and other special services associated with the accounts.

On November 2, 1989, the respondent wrote to the leasing company, advising that he would charge additional fees for the defense of counter claims over and above contingent commissions and fees. Shortly thereafter, the respondent began billing the leasing company for defending counter claims.

On February 15, 1990, the leasing company advised the respondent that it would not pay attorney fees for the defense of counter claims, and that the respondent should return all files if he would not work under those conditions. By that time, the respondent was working on approximately 123 of the leasing company's accounts and, in cases filed on those accounts, had defended counter claims and performed other special services for which payment was not expressly addressed in the various contracts and forwarding letters from the leasing company. Thereafter, the respondent wrote to the leasing company, advising that when it terminated his services in any case, he would be entitled to be paid on a *quantum meruit* basis for services rendered. The respondent also advised the leasing company of his right to an attorney's lien for unpaid fees. The respondent and GCI continued to work on the leasing company's collection cases. Before the fee dispute arose, the respondent generally responded to telephone and written inquiries from the leasing company in a timely manner. After the fee dispute arose, the respondent often failed to respond to such inquiries in a timely manner.

The respondent continued to collect money on the delinquent accounts and he forwarded some of that money to the leasing company. Late in the period that he worked on collecting the leasing company's delinquent commercial lease accounts, the respondent held between $20,000 and $30,000 that he had collected on the leasing company's accounts in excess of the amount to which he was entitled as fees for collection of the accounts, as provided in the leasing company's forwarding letter. The respondent claimed that he was entitled to the disputed funds as attorney's fees for the *quantum meruit* value of special legal services he provided in defending counterclaims, taking an appeal and the like. The respondent, long after he started withholding disputed funds, advised the leasing company that he held the funds pursuant to an attorney's retaining lien, pending agreement as to, or determination of, the amount owed to the respondent for the special services which he had provided. Originally, he held the funds in GCI's office account. He later transferred the funds to his law office account and then to his personal custodial retirement account.

The respondent and GCI at all times maintained the funds in accounts available for payment to the leasing company upon the determination of the amount of the respondent's special attorney's fees and the amount due to the leasing company. In October 1992, the leasing company sued GCI and the respondent for money the leasing company claimed had been collected on its behalf by GCI or the respondent but not paid to the leasing company. The respondent filed a counter claim for attorney fees he claimed to be owed for uncompensated work he had done in representing the leasing company in the collections cases.

In the civil suit, the respondent argued that he was entitled to $19,145.34 of the funds. The trial court determined that he was entitled to approximately $11,000 as the *quantum meruit* value of the special legal services he provided to the leasing company. The trial court's judgment included the following conclusions of law:

14. As an excuse for not promptly remitting to [the leasing company,] [the leasing company's] share of collections made, Webster claimed an attorney's lien on the funds collected.

18. Webster, therefore, had the right to retain possession of monies from all accounts collected by him on behalf of [the leasing company] as an attorney's lien until his fees for special services performed by him for the benefit of [the leasing company], such as appeals, bank-

ruptcy litigation, replevin, and defense of counter claims, had been paid.

19. In spite of the fact that Webster's notice to Plaintiff of his claim of an attorney's lien was made long after he started withholding funds collected for [the leasing company] and was not specific as to the accounts or amounts affected, the lien was valid.

23. Webster's payments to himself of disputed, and not previously judicially established, attorney fees out of funds collected for [the leasing company] without the consent and knowledge of [the leasing company] constituted criminal conversions under I.C. 35–43–4–3.

When the trial court's judgment was final and after the respondent's unsuccessful appeal of the trial court's judgment to the Indiana Court of Appeals and his unsuccessful petition for transfer to the Indiana Supreme Court, he withdrew the remainder of the funds from his retirement account and paid the remainder to the leasing company, with interest and attorney's fees. He reported the funds he withdrew from his retirement account to pay the leasing company as income to him on his 1998 U.S. Individual Income Tax Return in the form of a taxable gross distribution from his retirement account.

The hearing officer found that the respondent violated Ind.Professional Conduct Rule 1.4(a)[1] by failing to keep his client adequately informed as to the status of the collection matters after the fee dispute arose; Prof.Cond.R. 1.15(b)[2] by fail-

---

1. Professional Conduct Rule 1.4(a) provides:
   (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

2. Professional Conduct Rule 1.15(b) provides:
   (b) Upon receiving funds or other property in which the client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

ing promptly to notify the client of funds he had collected on its behalf but that he was keeping pursuant to his attorney retaining lien for uncompensated legal services; and Prof.Cond.R. 1.15(c) [3] for depositing the disputed funds in a non-trust account containing the respondent's own funds. We agree and find that the respondent violated Professional Conduct Rules 1.4(a), 1.15(b), and 1.15(c).

The hearing officer further concluded that the respondent did not violate Prof. Cond.R. 8.4(b), which prohibits lawyers from committing criminal acts which reflect adversely on their honesty, trustworthiness, or fitness as lawyers in other respects, by converting the client's funds. Specifically, the hearing officer found that a finding of criminal conversion requires proof of both unauthorized control over property of another and that the unauthorized control was knowing or intentional.[4] The hearing officer found that the respondent's claim of entitlement to the funds as attorney's fees for the *quantum merit* value of special legal services he provided demonstrates the respondent's lack of "knowing and intentional" unauthorized control of the client's funds. He found that the respondent notified the client of his assertion of an attorney's retaining lien, that the respondent did not use the

funds for purposes unrelated to the client, and that when the trial court determined that a portion of the funds belonged to the client, the respondent promptly remitted them to the client.

In its petition for review, the Commission argues that the respondent's transfer of the disputed funds from the GCI account, first into his general law office operating account and later to his retirement account, constituted conversion.

The respondent retained control of the disputed funds pursuant to a good faith assertion of an attorney's retaining lien. We note that such liens are recognized both by statute and case law.[5] However, the assertion of such a lien does not authorize an attorney to transfer funds to personal use. The respondent's ignorance about his rights relative to asserting a lien was sufficiently profound to avoid our finding that he *knowingly* exercised unauthorized control over the disputed funds.

The respondent's stewardship of the disputed funds during his assertion of the lien was defective. Professional Conduct Rule 1.15(c) clearly provides that, where a lawyer, in the course of a representation, is in possession of property in which both the lawyer and another person claim interests,

---

**3.** Professional Conduct Rule 1.15(c) provides: (c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

**4.** Indiana Code Section 35–43–4–3 provides: "A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a Class A misdemeanor."

**5.** *See* I.C. 33–1–3–1, which permits an attorney to hold a lien "on any judgment rendered in favor of any person or persons employing such attorney to obtain the same ..." *See also Stewart & Irwin v. Johnson Realty*, 625 N.E.2d 1305, 1307 (Ind.Ct.App.1993) (stating, "It is well settled that an attorney has a right to retain possession of a client's documents, money or other property which come into the hands of the attorney professionally, until a general balance due the attorney for professional services has been paid ... [citations omitted] ... The lien is a creature of common law and depends upon the attorney's possession of certain documents, property or monies.")

the property is to be kept separate by the lawyer until there is an accounting and severance of interests. The respondent failed to keep the funds separate; hence our finding that he violated Prof.Cond.R. 1.15(c). However, we do not find that his commingling of the disputed funds amounted to their conversion.

We now turn to the issue of proper discipline. The hearing officer recommended that the respondent be suspended from the practice of law in this state, but for no more than six months. In other cases in which lawyers commingled client funds with their own and failed promptly to notify clients of funds in which the clients had an interest, this Court has not infrequently imposed a six-month suspension. *See, e.g., Matter of Tracy,* 676 N.E.2d 738 (1997) (depositing client funds into lawyer's personal checking account, by falsely stating to disciplinary commission that he had reimbursed the Immigration and Naturalization Service (INS) for all monies owed to it due to dishonored checks, and by practicing law before the INS without having an active license to practice law); *Matter of Helmer,* 634 N.E.2d 56 (1994) (failing promptly to notify client of receipt of funds in which client has an interest, failing to promptly deliver funds to client, and failing to hold property of clients separate from own property). In the present case, the respondent mishandled substantial funds in which both he and his client claimed an interest. Although no permanent financial harm befell the client due to the respondent's actions, the funds, held as they were in a nontrust account, were placed at risk due to the respondent's handling of them. We also note that the respondent promptly remitted the disputed funds to the client once the trial court's award was final and all attempts at appeal concluded.

We are also cognizant of the fact that the hearing officer found several factors in aggravation of the respondent's misconduct, including his refusal to acknowledge his actual violations of Prof.Cond.R. 1.4(a) and 1.15(b), and his substantial experience in the practice of law at the time of the misconduct at issue here. In light of all of these factors, we conclude that a suspension from the practice of law for a period of six months is appropriate.

It is, therefore, ordered that the respondent, Franklin A. Webster, is suspended from the practice of law in this state for a period of six (6) months, beginning December 1, 2002, at the conclusion of which he shall be automatically reinstated.

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and the hearing officer in this matter, and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the United States District Courts in this State, and the Clerk of each of the United States Bankruptcy Courts in this state with the last known address of the respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.

SHEPARD, C.J., and DICKSON and SULLIVAN, JJ., concur.

BOEHM and RUCKER, JJ., dissent as to sanction, and would instead impose a 30–day suspension from the practice of law.