**In the Matter of Manuel P. GUERRERO.**

**No. 584S191.**

Supreme Court of Indiana.

Sept. 24, 1985.

Patrick N. Ryan, Marion, for respondent.

David B. Hughes, Indianapolis, for Ind. Supreme Court Disciplinary Com'n.

PER CURIAM.

This matter is before us on a one-count Verified Complaint for Disciplinary Action charging the Respondent, Manuel Guerrero, with violating Disciplinary Rules 1–102(A)(2), 2–103(A) and 2–103(C) of the *Code of Professional Responsibility for Attorneys at Law.* The hearing officer appointed pursuant to Admission and Discipline Rule 23, Section 11(b) has submitted his Findings of Fact, Conclusions and Recommendation. The Respondent now petitions for review of the findings, conclusions and recommendation and the Disciplinary Commission also petitions for review of the hearing officer's recommendation.

The Respondent in this case does not concur in several factual findings made by the hearing officer and asserts error in such findings. Though he fails to cite to any testimony or other evidence in the record which would substantiate his contentions, his challenges to the findings and conclusions will be considered within the

process of our review of this case. Such review includes an examination of the tendered record, the hearing officer's findings and conclusions and any challenges thereto. *In re McDaniel* (1984), Ind., 470 N.E.2d 1327. *In re Welke* (1984), Ind., 459 N.E.2d 725. Although the hearing officer's findings are not binding upon the Court, they do receive emphasis in that the hearing officer has an opportunity to observe the witnesses, absorb the nuances of unspoken communication and attach credibility to the testimony. *In re McDaniel, supra.*

In light of the above considerations and upon review of all matters presented in this case, we find generally that the record presented for review supports the findings of the hearing officer. We find further that the Respondent is a member of the Bar of this State. On July 1, 1982, one Charles Jackson was seriously injured in a truck collision while driving a sanitation truck for the City of Marion. He was admitted to Marion General Hospital's intensive care unit with very extensive injuries. On July 2, 1982, Charles Jackson directed his wife to retain a specific law firm to represent their interests in connection with the injury. As a result, two agreements for representation were executed concerning the Jacksons' claims arising out of the collision.

Within a week of the above-described collision, the Respondent saw another sanitation truck driver, Johnny Clayton, who was driving by the Respondent's residence on his regularly scheduled route. Clayton had met and had known the Respondent for four or five years and frequently spoke to the Respondent when picking up trash on his sanitation route along the Respondent's house.

The Respondent inquired of Clayton how Jackson was getting along and stated that he would like to see him. Clayton answered that the Respondent would have to go to the hospital to do so. In the early 1960's the Respondent may have represented Jackson on one or two occasions during a divorce proceeding as an associate of Jacksons's then attorney. The Respondent had also represented the Sanitation Workers' Union in a wage dispute, but had never personally met with Jackson concerning this representation.

That day, the Respondent called upon Jackson in the intensive care ward. During this visit, the Respondent inquired of Jackson if he had an attorney. Jackson informed the Respondent that he had already employed an attorney, and the Respondent left.

Within a week, the Respondent made a second visit; this time Jackson had been moved to a regular room in the hospital. During this visit, the Respondent had a yellow tablet with him and told Jackson that if Jackson wanted to be represented by the Respondent, all he had to do is sign the tablet. Jackson refused. The Respondent left his card with Jackson and left the hospital.

In view of the above findings, this Court now concludes that the Respondent made an in-person contact and recommended the employment of himself to Jackson, a non-lawyer, who had not sought Respondent's advice regarding employment of a lawyer. By so doing, the Respondent violated Disciplinary Rule 2–103(A) of the *Code.*

The U.S. Supreme Court has distinguished in-person solicitation (from commercial speech) and has described it as "a practice rife with possibilities for over-reaching, invasion of privacy, the exercise of undue influence, and outright fraud." *Zauderer v. Office of Disciplinary Counsel,* 471 U.S. ——, ——, 105 S.Ct. 2265, 2277, 85 L.Ed.2d 652, 666 (1985); *Ohralik v. Ohio State Bar Assoc.,* 436 U.S. 447, 464–465, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978). The selection of an attorney by a lay person must result from an informed choice, free of influences or persuasions. Ethical Consideration 2–8 and Ethical Consideration 2–10(A). The Respondent in this instance has overstepped the bounds of these standards of ethics.

Having concluded that the Respondent has engaged in misconduct, this Court finds that the appropriate sanction is a

public reprimand. Accordingly, the Respondent is hereby reprimanded and admonished.

Costs of this proceeding are assessed against the Respondent.

DeBRULER and SHEPARD, JJ., not participating.