**In the Matter of James R. KELLER.**

**In the Matter of S. Jack Keller.**

Nos. 49S00–0006–DI–368, 98S00–0006–DI–369.

Supreme Court of Indiana.

Aug. 8, 2003.

Ronald E. Elberger, Bose, McKinney & Evans LLP, Indianapolis, IN, for the Respondents.

Donald R. Lundberg, Executive Secretary, Charles M. Kidd, Staff Attorney, Indianapolis, IN, for the Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

By authorizing advertisements for their law firm that suggested insurance companies would settle claims merely because their firm represented the claimants, the respondents violated the *Rules of Professional Conduct for Attorneys at Law.* For this and another advertising violation, we find today that the respondents should be publicly reprimanded.

The Indiana Supreme Court Disciplinary Commission charged the respondents, James R. Keller and S. Jack Keller, with violations of the *Rules of Professional Conduct* as a result of television advertisements they authorized during 1999 and 2000 for their law firm, Keller & Keller. A hearing officer conducted an evidentiary hearing on the charges, concluded the Commission failed to carry its burden of proof, and recommended this matter be dismissed. The Disciplinary Commission filed a timely petition for review, challenging the hearing officer's conclusions of law. Where the hearing officer's report is challenged, we review the record presented *de novo. Matter of Wilder,* 764 N.E.2d 617 (Ind.2002). Final determination as to misconduct and sanction rests with this Court. *Matter of Lamb,* 686 N.E.2d 113 (Ind. 1997); *Matter of Gerde,* 634 N.E.2d 494 (Ind.1994). Our jurisdiction over the respondents arises from their admission to the Indiana bar in February 1997.

## I. The Television Advertisements

The respondents purchased four television advertisements from a national marketing firm. Each advertisement consists of a standard presentation customized to name the law firm purchasing the advertisement. The first advertisement, known as the "Strategy Session," depicts a conference room where actors portraying insurance adjusters are discussing a claim. An older man, the "senior adjuster," asks a younger man, the "junior adjuster," how the claim should be handled. The junior adjuster describes the claim as "... a large claim, serious auto accident" and suggests they try to deny and delay to see if the claimant will "crack." The senior adjuster then asks which lawyer represents the victim, whereupon the junior adjuster responds: "Keller & Keller." A metallic sound effect follows and the senior adjuster, now looking concerned, states: "Keller & Keller? Let's settle this one." At this point in the advertisement, actor Robert Vaughn appears on screen and advises viewers, "[T]he insurance companies know the name Keller & Keller." He invites individuals who have been injured in an auto accident to tell the insurance companies they "mean business" by calling Keller & Keller. Vaughn provides the respondents' telephone number, which also appears at the bottom of the screen.

The second advertisement is a shorter version of the "Strategy Session," known as the "Settle–10" spot. This advertisement opens in a conference room with the senior adjuster asking which lawyer is representing the victim and the junior adjuster responding: "Keller & Keller." As with the "Strategy Session" spot, a metallic sound effect follows and the obviously concerned senior adjuster states: "Keller & Keller? Let's settle this one." The

respondents' telephone number appears at the bottom of the screen.

The third advertisement is a still shorter version of the "Strategy Session," known as the "Settle–5" spot. It begins with a metallic sound effect and ends with a troubled looking senior adjuster stating: "Keller & Keller? Let's settle this one."

The parties agree that these three advertisements are fictional dramatizations and not a re-enactment of any actual strategy session known by the respondents to have actually occurred.

The final advertisement, known as the "Victim's Rights" spot, features Vaughn introducing himself and stating:

> If you've been injured in an auto accident, you don't need talk. You need to take back what's been taken away from you. Tell the insurance companies you mean business. Tell them you've called Keller & Keller ... They go after your rights piece by piece by piece until you get every dollar you deserve.

The advertisement ends with a metallic sound effect and Vaughn suggesting that viewers call "right now."

## II. Arguments Presented by Parties

The hearing officer appointed to hear this matter concluded that the Disciplinary Commission failed to meet its burden of proving the alleged violations by clear and convincing evidence.[1] The Commission has petitioned for review of the hearing officer's findings, arguing that the hearing officer erred in failing to find that:

1. the respondents' television advertisements contain a statement, opinion, representation or implication regarding the quality of respondents' legal services in violation of Prof. Cond.R. 7.1(d)(4), and,

2. the respondents' television advertisements contain an implied endorsement of the respondents' law practice in violation of Prof.Cond.R. 7.1(d)(3).

The respondents' position concerning the review of this matter includes two arguments. First, in *Respondents' Petition for Review of Hearing Officer's Ruling which Excluded Expert Testimony,* they argue the hearing officer improperly excluded expert testimony "... with regard to the interpretation, application and constitutionality of [Prof.Cond.R.] 7.1(d)(3) and 7.1(d)(4)." We deny the respondents' petition and uphold the hearing officer's exclusion of this testimony. The Constitution of the State of Indiana vests this Court with exclusive jurisdiction in matters involving the admission and discipline of attorneys. Ind.CONST., art. VII, Section 4; *Matter of Kesler,* 272 Ind. 161, 163, 397 N.E.2d 574, 575 (1979). The testimony of expert witnesses on the subject of the practice of law is not proper evidence, as it is the province of this Court to determine what the practice of law is. *See Matter of Perrello,* 270 Ind. 390, 386 N.E.2d 174, 179 (1979).

The respondents also filed a brief in opposition to the Commission's petition for review, therein arguing that their advertisements are protected by the commercial speech doctrine recognized by the federal courts under the First Amendment to the United States Constitution, and are also protected by Article I, Section 9 of the Indiana Constitution. We will address these issues *infra.*

## III. Prof.Cond.R. 7.1(d)(4): Improper Representation or Implication Regarding the Quality of Legal Services.

Indiana Professional Conduct Rule 7.1(d) provides:

---

1. *Matter of Siegel,* 708 N.E.2d 869 (Ind.1999)

A lawyer shall not, on behalf of himself, his partner or associate, or any other lawyer affiliated with him or his firm, use or participate in the use of any form of public communication which:

* * *

(4) contains a statement or opinion as to the quality of the services or contains a representation or implication regarding the quality of legal services; ...

The evidence presented clearly and convincingly establishes that the respondents' advertisements contain a representation or implication regarding the quality of their legal services. Though the respondents' advertisements contain a brief printed disclaimer, "No specific result implied," the advertisements imply that clients represented by the respondents' law firm will achieve favorable results based solely upon the respondents' reputation with insurance companies. The respondents' advertisements create an impression that the claims they handle are settled, not because of the specific facts or legal circumstances of the claims, but merely by the mention of the name of the respondents' firm to insurance companies.

This Court has found that similar advertisements violated Prof.Cond.R. 7.1(d)(4). In *Matter of Anonymous*, 689 N.E.2d 442 (Ind.1997), where the attorney's advertisement claimed his law firm was a "premier personal injury law firm" with "30 years trial experience and a support network to rival that of a larger city firm" and "the track record and resources you need to win a settlement," we noted the danger underlying broad unsupported claims:

A person unfamiliar with personal injury litigation might understand the advertisement to promise that any claim or case handled by the respondents would result in a favorable settlement. *Anonymous* at 443.

Here, the respondents' advertisements suggest the very sort of improper implication of which we cautioned in *Anonymous*.

Similarly, in *Matter of Wamsley*, 725 N.E.2d 75 (Ind.2000) we found a violation of Prof.Cond.R. 7.1(d)(4) where an attorney's printed advertisement stated, "... my reputation, experience and integrity ... result in most of our cases being settled ..." Like the advertisements in *Anonymous* and *Wamsley*, the respondents' advertisements suggest insurance companies will be inclined to settle claims handled by their firm.[2]

The intent and purpose behind our *Rules of Professional Conduct* is to create a high standard for communicating with the public about legal services. The Preamble to the *Rules of Professional Conduct* provides:

The legal profession's relative autonomy carries with it special responsibilities of self-government. The profession has a responsibility to assure that its regulations are conceived in the public interest and not in furtherance of parochial or self-interested concerns of the bar. *Indiana Rules of Court*, West Publishing (2003), p. 336.

The United States Supreme Court recognized this same concept when it stated:

[B]ecause the public lacks sophistication concerning legal services, misstatements that might be overlooked or deemed unimportant in other advertising may be

**2.** The advertising campaign in question here has also been the subject of litigation in North Carolina. In *Farrin v. Thigpen*, 173 F.Supp.2d 427 (M.D.N.C.2001), the federal district court found that the "Strategy Ses-

sion" spot created "... an unjustified expectation that the lawyers advertised can obtain settlements based solely on their reputation and the insurance industry fear or reluctance to try a case against them." *Farrin* at 440.

found quite inappropriate in legal advertising. *Bates v. State Bar of Arizona,* 433 U.S. 350, 383, 97 S.Ct. 2691, 2709, 53 L.Ed.2d 810 (1977).

Accordingly, we find respondents' advertisements violate Prof.Cond.R. 7.1(d)(4).[3]

## IV. Respondents' Claims

■ The respondents contend that their advertisements are protected by the commercial speech doctrine recognized by the federal courts under the First Amendment to the United States Constitution, and are also protected by Article I, Section 9 of the Indiana Constitution. We reject both of these arguments.

"There can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity. The government may ban forms of communication more likely to deceive the public than to inform it." *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.,* 447 U.S. 557, 563, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980). Because we have found the respondents' advertisements unfairly imply a particular favorable result in cases involving insurance companies, the advertisements are more likely to deceive the public than inform it and thus are not protected under the First Amendment's commercial speech doctrine.

Likewise, even if Article I, Section 9 of the Indiana Constitution[4] is viewed as ". . . more comprehensive than the first amendment,"[5] it is not so comprehensive as to permit deceptive and misleading communication in the context before this Court. While the right to speak clause is broad, the responsibility clause ensures:

> . . . despite the presence of the right to speak clause, the state retains its delegated authority to promote the peace, safety and well-being of Hoosiers by punishing expression that could be thought to undermine those ends. *Whittington v. State,* 669 N.E.2d 1363 (Ind.1996) (fn 6).

We hold that the regulation of attorney advertising is consistent with the responsibility clause of Article I, Section 9. "The selection of an attorney by a lay person must result from an informed choice, free of influences or persuasions." *Matter of Guerrero,* 482 N.E.2d 1139, 1140 (Ind. 1985). The advertisements put forth by the respondents do not promote an informed choice, but instead tend to mislead the public. Accordingly, we find the respondent's state constitutional argument unpersuasive.

## V. Prof.Cond.R. 7.1(d)(3): Endorsement

Indiana Professional Conduct Rule 7.1(d)(3) prohibits an attorney from using

---

3. As part of his finding that the Commission failed to carry its burden of proof, the hearing officer found the Commission failed to produce any evidence the public sustained actual harm because of the advertisements. We find, however, that such a showing by the Commission was not necessary in order to find a violation of Prof.Cond.R. 7.1(d). The risk of deceiving the public is sufficient to establish a violation of Prof.Cond.R. 7.1(d). *See, e.g., Matter of Anonymous,* 689 N.E.2d 442 (Ind.1997) (advertisements that a person might misunderstand to promise that any claim handled by the attorney would result in a favorable settlement were improper); *Matter of Anonymous,* 775 N.E.2d 1094, 1095

(Ind.2002) (holding no requirement of actual deception, but only risk of deception, to support Prof.Cond.R. 7.1(b) violation).

4. Article I, Section 9 provides:

No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for abuse of that right, every person shall be responsible.

5. Randall T. Shepard, *Second Wind for the Indiana Bill of Rights,* 22 IND.L.REV. 575, 581 n. 39 (1989).

any form of public communication which contains an endorsement of a lawyer. The parties stipulated that none of the four advertisements contain an express endorsement of the respondents. The stipulation, however, does not address the issue of an implied endorsement. We find that the "Victim's Rights" advertisement contains an implied endorsement of the respondents.

We have not had the opportunity to define "endorsement" as used in Prof. Cond.R. 7.1(d)(3). Accordingly, as with statutory construction, we give undefined words their plain, ordinary, and usual meaning, unless the construction is plainly repugnant to the intent or the context of the rule under consideration. *Hinojosa v. State*, 781 N.E.2d 677, 680 (Ind.2003). The hearing officer found that:

> "Endorse" means "to give approval to; support; sanction [to *endorse* a candidate]" or "to state, as in an advertisement, that one approves of (a product, service, etc.), often in return for a fee" while an "endorsement" is "a statement endorsing a person, product, etc., as in an advertisement." Webster's New World Dictionary, p. 449 (3rd College ed.1994) (third and second, subpart c definitions). "Endorsement" also has been defined as "[a]pprobation; sanction; support: *sought the union's endorsement*." *The American Heritage College Dictionary*, p. 454 (Houghton Mifflin 3rd ed.1993) (third definition) (Joint Exhibit 24); see also *Webster's New Twentieth Century Dictionary*, p. 600 (Simon and Schuster, 2d., 1983) ("endorsement ... 4. approval; sanction.").

In the advertisements, Vaughn tells viewers, "[t]he insurance companies know the name Keller & Keller," "[t]ell the insurance companies you mean business. Tell them you've called Keller & Keller

...," and, finally, "[t]hey go after your rights piece by piece by piece until you get every dollar you deserve." The purpose of these statements is to reinforce the notion established in the "Strategy Session" advertisement that the name Keller & Keller alone achieves results. In advising that the respondents "go after your rights piece by piece by piece" until every possible dollar is recovered, Vaughn clearly is supporting the respondents and their ability to secure a positive result for the client, and even implies by these statements that, based on past successes, this is the respondents' usual outcome. Vaughn clearly implies that Keller & Keller can provide the services that the viewers need. He is not just encouraging the public to seek legal assistance, he is endorsing their contact with the firm of Keller & Keller because of their reputation. There is a distinction between simply suggesting that viewers call Keller & Keller, and suggesting that viewers who call Keller & Keller will obtain a favorable outcome. Because of Vaughn's endorsement of the respondent's services, we find the respondents violated Prof.Cond.R. 7.1(d)(3).

## VI. Sanction

Having found the respondents guilty of misconduct, we must now determine the appropriate sanction. The hearing officer noted the great lengths that the respondents went to research the propriety of their advertisements. Nonetheless, the respondents' advertisements were defective. As in *Matter of Wamsley*, the respondents' advertisements divest the public of the opportunity to make a decision on whether to hire them based on facts about the respondents and their qualifications. Accordingly, for the protection of the public, we find that the respondents' faulty advertisements warrant the same sanction imposed in *Wamsley*, that being a public reprimand.

Accordingly, the respondents, James R. Keller and S. Jack Keller, are hereby reprimanded and admonished for the misconduct set forth herein.

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d), to the hearing officer, and to the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the United States District Courts in this state, and the clerks of the United States Bankruptcy Courts in this state.

Costs of this proceeding are assessed equally against the respondents.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.

SHEPARD, C.J., not participating.