**John ALVARADO, Appellant–Plaintiff,**

**v.**

**Sarah NAGY, Appellee–Defendant.**

**No. 48A02–0403–CV–273.**

Court of Appeals of Indiana.

Dec. 21, 2004.

John Alvarado, Pendleton, IN, Appellant pro se.

Kevin P. McGoff, Mark E. Kamish, Kiefer & McGoff, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

John Alvarado, pro se, appeals the dismissal of the complaint he filed against Sarah Nagy, the attorney who represented him in an unsuccessful attempt to secure a modification of a sentence he was serving. The complaint was dismissed, upon Nagy's motion, for lack of subject matter jurisdiction.

We reverse.

The facts are that at all times relevant to this appeal, Alvarado was incarcerated at the Correctional Industrial Facility in Pendleton, Indiana. In May 2002, Alvarado hired Nagy to represent him in an effort to modify his sentence. According to the contract, Alvarado was to pay a flat fee of $2500, which was based on Nagy's billable rate of $250 per hour. Alvarado paid the fee and Nagy contacted the Marion County Prosecutor's Office (the MCPO) and commenced legal efforts to secure a modification of Alvarado's sentence. Those efforts proved unsuccessful, culminating in the following letter to Nagy from Jeffrey Gill, a deputy prosecutor at the MCPO:

> I am in receipt of your letter dated September 20, 2002. I have reviewed the information which you enclosed with your letter and I have reviewed the file. While I am impressed and encouraged by the progress that Mr. Alvarado has made during the course of his incarceration, it is the position of the Marion County Prosecutor's office that the original sentence was the appropriate sentence in this matter. Therefore, I must regretfully inform you that the State would not consent to any modifications of the defendant's sentence in this case.

*Appellee's Appendix* at 13. Nagy notified Alvarado by letter of the MCPO's decision and informed him that there remained the option of post-conviction relief to accomplish the same end. She advised him that the fee for such an action would be $20,000–$25,000, but that she would "begin work in this matter for half of the flat fee up front and the remaining paid in monthly installments." *Id.* at 12. Alvarado responded with the following letter:

> I am writing you in reference to obtaining the entire case file pursuant to Rule 1.16(a) and Indiana Code § 33–1–21–9.

> Specifically, I am requesting a copy of the correspondence that you sent to the State of Indiana on September 20, 2002.

> Also, at this time, I feel that I was mislead [sic] into the agreement and that the flat fee that was closed [sic] with that agreement was unreasobale [sic] pursuant to the provisions on Indiana Rule of Professional Conduct 1.5.

> Wherefore, at your earliest convenience I would appreciate that you forward me $2000.00 in unearned fees, to satisfy this unfair representation. I request that you please note also, that in your correspondence dated December 17, 2001, you informed me that the cost of your representation based on a jury trial would have been $15,000. Thereafter, you informed me in your correspondence dated October 31, 2002 the fees would be $20,000 to $25,000.

> You are requested to respond within ten (10) days or further action will be taken in this matter.

*Id.* at 14.

Nagy refused Alvarado's request to refund a portion of the fee he had paid. On December 11, 2003, Alvarado filed a complaint in the Madison Circuit Court seeking compensatory and punitive damages. A more detailed summary of that complaint will be set out later in this opinion. On February 25, 2004, Nagy filed Defendant's Second Motion to Dismiss, alleging that the Madison Circuit Court did not have jurisdiction over the subject matter of Alvarado's complaint, which the complaint described as "matters relating to the practice of law." *Id.* at 25. The trial court granted the motion to dismiss on March 3, 2004, and this appeal ensued.

This court has observed that a court either has jurisdiction or it does not. *Kondamuri v. Kondamuri,* 799 N.E.2d

1153 (Ind.Ct.App.2003), *trans. denied.* For this reason, the question of jurisdiction is a question of law that is reviewed de novo. *Id.* There are three types of jurisdiction, only one of which—jurisdiction of the subject matter—is implicated here. Subject matter jurisdiction refers to the court's power to hear and decide a class of cases. *Id.* Generally, the question of subject matter jurisdiction is resolved by determining whether the claim involved falls within the general scope of authority conferred on the court by statute or the Indiana Constitution. The question of subject matter jurisdiction may be raised at any time. *Id.*

The appropriate standard of reviewing rulings on motions to dismiss for lack of subject matter jurisdiction depends upon what occurred in the trial court. *Hubbard v. Columbia Women's Hosp. of Indianapolis,* 807 N.E.2d 45 (Ind.Ct.App.2004). Specifically, the standard depends upon (1) whether the trial court resolved disputed facts in making its decision, and (2) if it did resolve disputed facts, whether it conducted an evidentiary hearing or ruled on a paper record. *Id.* Where, as here, the pertinent facts are not in dispute, the question is purely one of law. *Id.*

Nagy sought dismissal on grounds that the action Alvarado initiated in filing his complaint was essentially a matter of attorney discipline and "it is the exclusive province of [the Indiana Supreme Court] to regulate professional activity". *Appellee's Appendix* at 25. The trial court granted Nagy's motion without explaining its rationale. In such cases, we must presume the court granted the motion to dismiss on all the grounds set forth in the motion. *Lawson v. First Union Mortg. Co.,* 786 N.E.2d 279 (Ind.Ct.App.2003).

■ It is beyond debate that the Indiana Supreme Court is indeed the exclusive arbiter of matters involving attorney discipline in this state. Such exclusive jurisdiction is conferred by the Indiana Constitution. *See* Ind. Const., art. 7, section 4; *In re Keller,* 792 N.E.2d 865 (Ind. 2003). Thus, we fully agree that the Madison Circuit Court has no jurisdiction over attorney discipline cases. We conclude, however, that the rule does not apply here because the instant case does not fit in that category of cases.

■ The pivotal question before us is whether Alvarado's action can fairly be categorized as a case involving attorney discipline. We begin by considering the nature of the class of cases over which the supreme court has exclusive jurisdiction. Article 7, section 4 of the Indiana Constitution describes that class of cases as including: "[A]dmission to the practice of law; discipline or disbarment of those admitted; [and] the unauthorized practice of law, discipline, removal, and retirement of justices and judges[.]" Although the foregoing provision does not define the meaning of the phrase "attorney discipline", (which we will hereafter use to describe the category of cases identified in article 7, section 4) the list aids in understanding the parameters of the category.

■ The listed items are consistent with the traditional meaning of the term "discipline," which is, "a rule or system of rules governing conduct or activity". *Merriam–Webster Online Dictionary* (2004), *available at* http://www.m-w.com/cgi-bin/dictionary?book=Dictionary & va=discipline. We note that in exercising its jurisdiction in this area, the supreme court has promulgated rules by which the practice of law is governed in this state. *See* Ind. Rules of Professional Conduct. In its role as exclusive arbiter over matters of attorney discipline, the supreme court is responsible for enforcing those rules. In *Levy v. State,* 799 N.E.2d 71 (Ind.Ct.App.

2003), *trans. denied*, this court recently discussed the nature of the supreme court's duties in performing this function. For instance, we noted the Indiana Constitution confers upon the court "exclusive jurisdiction relating to the disbarment or discipline of attorneys." *Id.* at 72 (quoting *In re Mann*, 270 Ind. 358, 360, 385 N.E.2d 1139, 1141 (1979)). We described the court's duties in this regard as including, "preserv[ing] the integrity of the legal profession and safeguard[ing] the public from those who do not meet acceptable standards of professional behavior", *Levy v. State*, 799 N.E.2d at 72 (quoting *In re Mann*, 270 Ind. at 360, 385 N.E.2d at 1141), and "regulat[ing] professional legal activity in this state". *Levy v. State*, 799 N.E.2d at 73 (quoting *In re Murgatroyd*, 741 N.E.2d 719, 719 (Ind.2001)). Meting out punishment in cases where misconduct is found is an exclusive and integral part of this oversight responsibility. Finally, and most significantly, we note that the Indiana Rules for Admission to the Bar and Discipline of Attorneys prescribes the penalties that may be imposed by the supreme court upon a finding of misconduct, to wit:

> One of the following types of discipline may be imposed upon any attorney found guilty of misconduct: permanent disbarment from the practice of law; suspension for a definite or an indefinite period from the practice of law subject to reinstatement as hereinafter provided; suspension for a definite period, not to exceed six (6) months, from the practice of law with provision for automatic reinstatement upon such conditions as the Court shall specify in the order of suspension; a public reprimand; a private reprimand; or a private administrative admonition.

Admis. Disc. R. 23(3)(a). Also, Rule 23(3)(c) authorizes the court, in lieu of suspension or disbarment, to place attorneys on probation where deemed appropriate. Conspicuously absent from the list of sanctions the court may impose as part of the disciplinary process is any type of monetary fine.

■ To review, the Indiana Supreme Court has exclusive jurisdiction over matters of attorney discipline. In discharging that responsibility, it regulates professional legal activity in order to preserve the integrity of the legal profession and safeguard the public from those who do not meet acceptable standards of professional behavior. *See Levy v. State*, 799 N.E.2d 71. To that end, the court promulgated rules of conduct by which members of the bar must abide. A failure to do so subjects an attorney to disciplinary proceedings before the court, which may impose certain, enumerated penalties upon a finding of misconduct. Such penalties include reprimands or restrictions placed upon the future practice of law, but do not include monetary sanctions.

Returning now to the instant case, we must decide whether Alvarado's action against Nagy belongs in the category of attorney discipline cases described in detail above, and over which the Indiana Supreme Court has exclusive jurisdiction. We conclude that it falls well outside those boundaries. So far as we can tell, the primary argument in support of Nagy's position is that Alvarado's complaint seeks punitive damages, i.e., "damages designed to punish the wrongdoer and discourage him and others from similar conduct in the future[.]" *Wohlwend v. Edwards*, 796 N.E.2d 781, 785 (Ind.Ct.App.2003). Nagy reasons that punitive damages equals attorney punishment—which in turn may only be decided by the supreme court, apparently in whatever form it may take. The flaw in this reasoning is that the element of Alvarado's lawsuit that Nagy contends takes it within the realm of attor-

ney discipline, i.e., punitive damages, is not an authorized punishment and thus not a part of the disciplinary process under the auspices and jurisdiction of the Indiana Supreme Court. Moreover, the conduct of which Alvarado complains, to the extent it can be discerned, is not the sort of misconduct the disciplinary process enacted by the supreme court is meant to address.

What sort of case is this, then? We conclude that Alvarado's perhaps inartfully drafted complaint for damages states a claim for legal malpractice. We make this determination after evaluating the nature of the underlying substantive claim set out in the complaint. In so doing, we look beyond the labels used by Alvarado, and look instead to the substance and central character of the complaint, the rights and interests involved, and the relief demanded. *See Morris v. Bank One, Indiana, N.A.,* 789 N.E.2d 68 (Ind.Ct.App.2003), *trans. denied.* Alvarado's complaint alleges that Nagy signed a contract to represent him in seeking a sentence modification. Nagy did not accomplish that goal and Alvarado charges that he should not have to pay her fee. Obviously, he was dissatisfied with her performance under the contract and seeks return of the contractual fee. Any contract for work includes an implied duty to do the designated work skillfully, carefully, and in a workmanlike manner. *INS Investigations Bureau, Inc. v. Lee,* 784 N.E.2d 566 (Ind. Ct.App.2003), *trans. denied.* The failure to do so is an actionable tort, as well as a breach of contract. *Id.* As indicated above, punitive damages are not incompatible with a lawsuit to recover legal fees expended for allegedly flawed representation, and do not remove said lawsuit from the realm of legal malpractice into the real of attorney discipline.

Finally, we wish to emphasize that our conclusion that the trial court erred in granting Nagy's motion to dismiss should not be interpreted as a comment upon the merits of Alvarado's lawsuit. Indeed, the basis for Alvarado's claim of substandard performance is threadbare at best. We hold only that the matter to be decided therein lies squarely within the jurisdiction of the Madison Circuit Court.

Judgment reversed.

MATHIAS, J., and DARDEN, J., concur.