**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 19 2012, 9:09 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CHRISTOPHER L. LAUX**
Notre Dame, Indiana

ATTORNEYS FOR APPELLEE:

**ANDREW J. MIROFF**
BRIAN J. PAUL
CHRISTINA L. FUGATE
Ice Miller LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SUZANNE THROGMARTIN, | ) | |
| | ) | |
| Appellant-3rd Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 84A05-1110-MF-573 |
| | ) | |
| GREGG APPLIANCES, INC., | ) | |
| | ) | |
| Appellee-3rd Party Defendant. | ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable Christopher A. Newton, Judge
Cause No. 84D04-0910-MF-9804

**June 19, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Suzanne Throgmartin (Suzanne) appeals from the trial court's order dismissing her third-party complaint against Gregg Appliances, Inc. (Gregg). Suzanne raises the following issue for our review: Did the trial court err by dismissing Suzanne's third-party complaint against Gregg?

We affirm.

As best we can tell from the convoluted record before us,[1] the following is the factual and procedural background necessary for resolution of this appeal. Gregg leases property in Indiana to various H.H. Gregg appliance and electronics stores. In particular, in 1988, Gregg entered into an agreement with Gerald Throgmartin (Gerald) to lease property from him for a store located in Terre Haute, Indiana. One of the terms of the lease agreement and extensions was that H.H. Gregg would pay the rent directly to Gerald, or to whomever Gerald directed.

On January 23, 1998, Donald Throgmartin (Donald), Gerald's brother, filed a petition for dissolution of marriage from his then-wife, Suzanne, in Hamilton County. The parties negotiated a property settlement agreement (PSA) wherein Donald agreed to a marital property distribution judgment lien in the amount of $7,490,000.00 in favor of Suzanne to be paid over the course of 20 years. The judgment lien was to be secured by two parcels of real estate owned by Donald, one located in Marion County, and the other located in Madison County. Suzanne's attorney, however, failed to record the judgment liens on those parcels in Marion County and Madison County. Unbeknownst to Suzanne, Donald sold the Marion

---

[1]The failure of counsel to fully develop in their briefs the history of the proceedings among the parties has impeded appellate review.

2

County parcel to Gerald in December of 1998 in exchange for a $4,000,000.00 promissory note from Gerald. Donald sold the Madison County property in 2004. Suzanne learned of these real estate transactions only after a subsequent counsel conducted a title search when Donald advised Suzanne in June of 2008 that he was no longer able to make the monthly payments under the PSA.

As Donald was no longer able to make the monthly payments, on January 5, 2009, Suzanne initiated Emergency Proceedings Supplemental to Judgment in Hamilton County to enforce her judgment. Suzanne sought to determine if Donald had assets in Indiana that could be used to satisfy the remaining portion of her unpaid judgment of approximately $3,200,000.00. At a hearing on the matter, Donald testified that he was the owner of property in Vigo County and Howard County. Donald received rent from Gregg for those two stores in an aggregate amount of $23,343.75 per month. In September 2008, Donald had assigned the rent to Gerald, but Gerald did not enforce the assignments, and allowed Donald to receive the rent directly from Gregg. Gerald directed Gregg to deposit the rent into Donald's account with National City Bank. Suzanne asked the Hamilton County court to seize Donald's National City Bank account and garnish rent Donald was receiving from Gregg.

Ultimately, on May 19, 2009, the Hamilton County court denied Suzanne's request to garnish the rent, but granted her request to seize Donald's National City Bank account. After the order was entered, Donald instructed Gregg to redirect the $23,343.75 monthly rent payments to another of Donald's bank accounts with a different financial institution. On June 4, 2009, Suzanne filed a motion to correct error based on the Hamilton County court's

3

refusal to garnish the rent. On September 29, 2009, a hearing was held on Suzanne's motion to correct error.

On October 15, 2009, Suzanne served garnishment interrogatories on Gregg to determine where the rent from the Vigo County and Howard County stores was being sent. Gregg responded that the rent was being deposited as directed in Donald's bank account. On October 16, 2009, Gerald directed Gregg to pay the rent for the Howard County and Vigo County property directly to Gerald's bank account. On October 30, 2009, Gregg filed supplemental answers to interrogatories indicating that beginning in November of 2009, Gregg would be paying Donald $10,000.00 monthly in rent for the Howard County property only. Gregg also asserted that Donald had been receiving rent from the Vigo County property only at Gerald's direction.

In the letter dated October 16, 2009, counsel for Gerald wrote to Gregg's chief administrative officer to instruct him as to the payment of rental income from the Howard County and Vigo County property. Gerald's counsel asserted that on September 18, 2008, Don Throgmartin, LLC (the LLC) executed and delivered to Gerald two mortgages granting liens on the properties to secure all indebtedness owed by Donald and McGregor Commons, Inc. (McGregor) to Gerald. The mortgages contain provisions governing assignments of rent and leases. The LLC granted Gerald a security interest in the LLC's right, title, and interest in the leases and rents from the properties. In the event of default, Gerald had the right to collect all rent and income from the properties to apply to the indebtedness.

On March 27, 2009, Suzanne filed a Complaint to Foreclose Judgment Interest on Real Estate, for Legal Malpractice, Fraud and Attorneys' Fees in Marion County, naming

4

Donald, Gerald, Gregg, National City Bank, Steak 'N Shake, L.P., and Jan Edward Helbert, her attorney during the dissolution, as defendants. Suzanne argued that Gerald might assert an interest in the property by virtue of the warranty deed executed by Donald in the sale of the Marion County property. Suzanne contended that Gregg might assert an interest in the property by virtue of a Memorandum of Lease executed by Gregg's president. She also claimed that National City Bank might assert an interest in the property by virtue of a Pledge of Promissory Note and Assignment of Real Estate Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing executed by Donald. Suzanne argued that Steak 'N Shake, L.P. might assert an interest in the property by virtue of a Ground Lease dated May 6, 2005.

Suzanne argued that Gerald and Donald had engaged in a series of fraudulent transactions in an effort to undermine the judgment she obtained in the PSA in Hamilton County. In 1998 Donald sold the Marion County property to Gerald for $4,000,000.00 with a 20-year note, and Donald retained a mortgage interest in the property. Donald executed a Vendor's Affidavit in which he stated he had not executed any lien upon the real estate and no judgment had or might become a lien on the parcel. On July 31, 1999, Donald pledged the $4,000,000.00 note and mortgage from Gerald to National City Bank as security for a Commercial Time Note in the amount of $5,000,000.00. Donald verified that the Note and Mortgage were free and clear of all encumbrances and liens. On January 31, 2009, National City Bank called in the Commercial Time Note demanding immediate payment of the outstanding balance.

In order to avoid foreclosure on the Marion County parcel, Donald then entered into a Debt Settlement Agreement with Gerald on January 15, 2009. Gerald agreed to pay off the remaining balance of Donald's Commercial Time Note and, in exchange, Gerald no longer owed Donald any sums due on the original $4,000,000.00 Note and Mortgage.

Additionally, in 2005, Gerald and Donald each inherited from their mother a fifty-percent interest in real estate located in Howard County. That same year, Gerald and Donald entered into a like-kind exchange wherein Gerald transferred to Donald his fifty-percent interest in the Howard County real estate and a one-hundred-percent interest in the Vigo County real estate in exchange for two commercial outlots Donald owned in Florida.

Gerald filed an original Verified Complaint to Enforce Commercial Loans and Guaranty and to Foreclose Rental Assignments in Vigo County on October 23, 2009. Before the Hamilton County court ruled on Suzanne's motion to correct error, Donald petitioned for bankruptcy protection in Florida. As a result, all proceedings against Donald in Indiana were stayed. Gerald filed an unopposed motion in the bankruptcy court seeking relief from the stay to proceed with a foreclosure against the Vigo County and Howard County properties in rem. Gerald's request was granted and he petitioned the Vigo County court for permission to proceed with the foreclosure action, in rem.

In his foreclosure action, Gerald alleged the LLC, a Florida limited liability company, and McGregor, a Florida corporation, had the same last known address in Florida as Donald's last known address. He alleged that Orion Bank (Orion), a Florida financial institution, and McGregor were parties to a promissory note dated May 30, 2006, in the amount of $11,000,000.00. That note and related security instruments were assigned to

6

Gerald by a Non-Recourse Assignment of Note, Mortgage and Other Loan Documents dated June 27, 2007. Gerald asserted that in order to secure the amounts due from McGregor under the loan, Donald executed and delivered to Orion a Guaranty dated May 30, 2006, which was also assigned to Gerald. As further security for the amounts due from McGregor under the loan, on May 30, 2006, McGregor executed and delivered to Orion Bank a mortgage deed for the real estate located in Lee County, Florida, which was assigned to Gerald.

Gerald contended that he and Donald were parties to a Promissory Note dated June 27, 2007, in the original principal amount of $2,168,705.00. Both loans matured on May 30, 2008. On September 18, 2008, McGregor, Donald, and the LLC executed and delivered to Gerald an extension Agreement for Loans, extending the maturity date of the loans to May 30, 2009. In order to secure the amounts due under the loans, and to induce forbearance of collection of the amounts due, the LLC executed and delivered to Gerald Real Estate Mortgages, Security Agreements, Collateral Assignment of Rents and Leases, and Fixture Filing on the Howard County property and the Vigo County properties. The mortgage agreements were recorded in each county.

McGregor and Donald defaulted on the loans and the aggregate obligations due from Donald to Gerald were claimed to be $6,919,694.62. Gerald also sought to foreclose on his liens for the rents pledged under the rental assignments. Gerald named Suzanne as a defendant in that action to answer as to any interest she may have had as to the rent. Suzanne filed a counterclaim against Gerald and a third-party claim against Gregg. Suzanne asserted that Gregg became accountable to her as a garnishee defendant for rents paid beginning on

October 9, 2009, when she served her garnishment interrogatories in the Hamilton County dissolution action.

Meanwhile, in Marion County, Suzanne initiated an action against Gerald and others seeking to foreclose on the Marion County property Donald had pledged as security under the PSA in the Hamilton County dissolution action. Gerald and Suzanne entered into negotiations through counsel for each, and reached a global settlement agreement (GSA) resolving all pending claims in all three counties. One of the terms of the GSA was Suzanne's disclaimer of any interest she might have had in the Vigo County real estate. Even though Suzanne had given her attorney authority to agree to the GSA, she later refused to execute the settlement documents. Gerald sought an order to enforce the GSA in the Marion County court.

While Gerald's motion was pending in Marion County, the Vigo County court held a hearing on Gerald's motion for summary judgment as to Suzanne's counterclaim against him in Vigo County. During the hearing, counsel for Gerald mentioned the pending motion in Marion County. Counsel for Gregg also raised the issue of jurisdiction, as Suzanne's garnishment claims had been decided in Gregg's favor in Hamilton County, but the motion to correct error ruling had been stayed. Even though the Marion County motion remained pending, Gregg filed a motion for summary judgment in Vigo County. Before the Vigo County court could rule on the motion for summary judgment, the Marion County court ruled that Gerald and Suzanne entered into the GSA, that it was binding, and that it was enforceable against Suzanne. Suzanne's appeal of that order was dismissed with prejudice by this court. *See* Case No. 49A05-1108-MF-406.

On July 26, 2011, the Vigo County court heard argument about the effect of the Marion County court's ruling on the GSA on Suzanne's counterclaim against Gerald and third-party garnishment claim against Gregg. Ultimately, the trial court dismissed Suzanne's counterclaim against Gerald with prejudice and determined that Suzanne had no interest in the Vigo County real estate. The trial court also dismissed Suzanne's third-party claim against Gregg. Suzanne now appeals.

Suzanne unsuccessfully sought to satisfy her judgment against Donald through proceedings supplemental in Hamilton County and named Gregg as a garnishee defendant. Suzanne then sought to satisfy her judgment against Donald in Vigo County by bringing a counterclaim against Gerald and third-party garnishment claim against Gregg. Beginning in March 2007, Gregg paid rent for the Vigo County property to the LLC at Gerald's direction. On October 9, 2009, Suzanne served garnishment interrogatories on Gregg. On October 16, 2009, counsel for Gerald instructed Gregg to send the rent payments for the Vigo County property and Howard County property to Gerald. Beginning with the November 2009 rent payment, Gregg paid rent for the Vigo County property to Gerald. In Gregg's supplemental responses to interrogatories, however, Gregg stated that $10,000.00 per month would be paid to Donald and that amount represented rent for the Howard County property only.

Suzanne contends that when Gregg was served the garnishment interrogatories, Gregg was "accountable from that date forward on monies due and owing to Don." *Appellant's Brief* at 5. Suzanne cites to Ind. Code Ann. §34-25-3-3 (West, Westlaw current through legislation effective May 31, 2012) in support of her position. Gregg, on the other hand,

asserts that the trial court correctly dismissed Suzanne's claim because it lacked jurisdiction to hear garnishment claims stemming from the judgment in the Hamilton County dissolution.

"Subject matter jurisdiction is the power to hear and determine cases of the general class to which any particular proceeding belongs." *K.S. v. State*, 849 N.E.2d 538, 540 (Ind. 2006). Our Supreme Court has stated the following:

> Far too often there is an inclination in a law suit to attempt to convert a legal issue into one of "jurisdiction" and from that point contend all actions of the court are void, and that the question of jurisdiction may be raised at any time or that the proceedings are subject to collateral attack and are a matter for original writs in this court.

*Id*. at 541. The question of jurisdiction is a question of law that is reviewed de novo. *Alvarado v. Nagy*, 819 N.E.2d 520 (Ind. Ct. App. 2004). "Generally, the question of subject matter jurisdiction is resolved by determining whether the claim involved falls within the general scope of authority conferred on the court by statute or the Indiana Constitution" and may be raised at any time. *Id*. at 523.

This court has stated the following about proceedings supplemental:

> A trial court is vested with broad discretion in conducting proceedings supplemental. Under T.R. 69, proceedings supplemental are initiated under the same cause number in the same court which entered judgment against the defendant. Proceedings supplemental are summary in nature and the judgment-debtor is not afforded all the due process protections ordinarily afforded to civil defendants because the claim has been determined to be a justly owed debt reduced to judgment. A proceeding supplemental under T.R. 69 is not an independent action asserting a new or different claim from the claim upon which the judgment was granted, but is merely a proceeding to enforce the earlier judgment. The T.R. 69 petition speaks only to *how* the claim is to be satisfied, whereas the complaint in the original action speaks to *whether* the claim should be satisfied. Proceedings supplemental are merely a continuation of the underlying claim and may not be used to collaterally attack the underlying judgment.

10

*Hermitage Ins. Co. v. Salts*, 698 N.E.2d 856, 858-59 (Ind. Ct. App. 1998) (internal citations

and quotations omitted) (emphasis in the original).

T.R. 69(E) provides in pertinent part as follows:

Notwithstanding any other statute to the contrary, proceedings supplemental to execution may be enforced by verified motion or with affidavits in the court where the judgment is rendered alleging generally:

(1) that the plaintiff owns the described judgment against the defendant;

(2) that the plaintiff has no cause to believe that levy of execution against the defendant will satisfy the judgment;

(3) that the defendant be ordered to appear before the court to answer as to his non-exempt property subject to execution or proceedings supplemental to execution or to apply any such specified or unspecified property towards satisfaction of the judgment; and,

(4) if any person is named as garnishee, that garnishee has or will have specified or unspecified nonexempt property of, or an obligation owing to the judgment debtor subject to execution or proceedings supplemental to execution, and that the garnishee be ordered to appear and answer concerning the same or answer interrogatories submitted with the motion.

If the court determines that the motion meets the foregoing requirements it shall, ex parte and without notice, order the judgment debtor, other named parties defendant and the garnishee to appear for a hearing thereon or to answer the interrogatories attached to the motion, or both.

Ind. Code Ann. § 34-55-8-1 (West, Westlaw current through legislation effective May 31,

2012) provides in pertinent part that a judgment creditor "is entitled to an order to be issued

by any circuit, superior, or city court in the jurisdiction to which the execution issued that

requires the judgment debtor to appear before the court to answer concerning the judgment

debtor's property, income, and profits within the court to which the execution was issued."

11

Here, the proper court to make the garnishment determination was the Hamilton County court. In fact, the Hamilton County court denied Suzanne's attempt to garnish the rent payments made by Gregg through proceedings supplemental she had initiated there. Suzanne's motion to correct error from the Hamilton County court's order remained pending because of Donald's personal bankruptcy.

We have stated the following about third-party practice:

Third-party practice, or impleader, is governed by Indiana Trial Rule 14, which reads in relevant part:

"(A) **When defendant may bring in third party.** A defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. The third-party plaintiff must file the third-party complaint with his original answer or by leave of court thereafter with good cause shown. The person served with the summons and the third-party complaint, hereinafter called the third-party defendant, as provided in Rules 12 and 13 may make:

(1)  his defenses, cross-claims and counterclaims to the third-party plaintiff's claims;
(2)  his defenses, counterclaims and cross-claims against any other defendants or third-party defendants;

(3)  any defenses or claims which the third-party plaintiff has to the plaintiff's claim which are available to the third-party defendant against the plaintiff; and

(4)  any defenses or claims which the third-party defendant has as against the plaintiff.

The plaintiff may assert any claim against the third-party defendant who thereupon may assert his defenses, counterclaims and cross-claims, as provided in Rules 12 and 13.    A third-party defendant may proceed under this rule against any person not a party to the action who is or may be liable to him for all or part of the claim made in the action against the third-party defendant."

12

*Rust-Oleum Corp. v. Fitz*, 801 N.E.2d 754, 757 (Ind. Ct. App. 2004) (quoting Ind. Tr. R. 14).

The Vigo County court correctly determined that Suzanne's third-party complaint against Gregg should be dismissed. Suzanne's theory of recovery of the rental income from the Vigo County property was that Gregg owed the money to Donald, and she had an unsatisfied judgment in Hamilton County against Donald she sought to enforce. Donald, however, no longer had an interest in the property and had received rental income only at Gerald's direction. After Suzanne's service of interrogatories on Gregg in the Hamilton County court, Gerald directed Gregg to make the rental payments for the Vigo County property to him. The lease for the Vigo County property was entered into between Gerald and Gregg and title to the real estate was never transferred as Gerald and Donald entered into various conveyances with respect to the property over the years. The Vigo County court, therefore, lacked subject matter jurisdiction to determine Suzanne's claims against Gregg. Although her complaint against Gregg was for damages, she was attempting to enforce the Hamilton County judgment in Vigo County.

Judgment affirmed.

MAY, J., and BARNES, J., concur.